Philip M. Black (SBN 308619)
Robert C. Finkel (*pro hac vice* application to be filed)
**WOLF POPPER LLP**
570 Lexington Ave.
New York, NY 10022
Telephone: (212) 759-4600
Email: pblack@wolfpopper.com
         rfinkel@wolfpopper.com

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

|  |  |
|---|---|
| PRABHDEEP CHEHAL, VIRAL PATEL, CHAIM LEVI, MICHAEL GAYED, and JEFFREY NGAFUA, individually and on behalf of all others similarly situated, | : Civil Action No.<br>:<br>: **CLASS ACTION COMPLAINT**<br>:<br>: CLASS ACTION |
| Plaintiffs, | :<br>: DEMAND FOR JURY TRIAL |
| vs. | :<br>: |
| ROBINHOOD MARKETS, INC. and ROBINHOOD DERIVATIVES, LLC, | :<br>:<br>: |
| Defendants. | :<br>: |

Plaintiffs Prabhdeep Chehal, Viral Patel, Chaim Levi, Michael Gayed, and Jeffrey Ngafua (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against Defendants Robinhood Markets, Inc., and Robinhood Derivatives, LLC (collectively "Robinhood" or "Defendants") to recover billions of dollars in wagers from Robinhood's unlawful operation of an unlicensed sports gambling platform and related deceptive and misleading business practices.  Plaintiffs bring this action by and through their attorneys and allege, based upon personal knowledge as to their own actions and based upon information and belief and reasonable investigation by their counsel as to all other matters, as follows.

## NATURE OF THE ACTION

1.    Defendant Robinhood facilitates the sale of illegal and unregulated sports event gaming contracts to its customers through its mobile app and website.  The event contracts are listed by non-party Kalshi, Inc. ("Kalshi") on its designated contract market ("DCM").  Through a partnership with Kalshi, Robinhood facilitates the sale of Kalshi's sports event contracts to Robinhood's customers, who are led to believe that sports event contracts are a modern, sophisticated form of investing on a federally regulated commodities exchange that can be accessed on a phone.  In reality, the sports event contracts Robinhood sells are old-fashioned wagers on the outcomes of sporting events (i.e., gaming).  By operating an unlicensed sports gambling operation, Robinhood has violated state gambling laws and regulations, engaged in deceptive conduct, and unjustly enriched itself at the expense of millions of consumers.

2.    Robinhood began selling event contracts on October 28, 2024, to anyone over the age of 18 in all 50 states, even in states where gambling in casinos and making bets through sportsbooks is restricted to individuals who are 21 or older, like New Jersey.  Robinhood aggressively markets prediction markets—through push notifications from its app, television commercials, and ads on the internet—to potential users and accepts payments through financial systems widely accessible to consumers.

3.    According to Robinhood, "[a]n event contract is a type of financial derivative that allows traders to speculate on a specific event. These contracts are generally structured around 'Yes' or 'No' positions, and fluctuate in price based on the projected occurrence of the event. Event contracts

CLASS ACTION COMPLAINT

then pay out if the position held matches the correct occurrence of the event; otherwise, they expire with no value."[1]  Event contracts are priced between one cent and 99 cents with each cent representing a 1% probability of the event occurring.  As described by Robinhood, "if a contract is priced at 53 cents, this can be interpreted as a 53% probability that it will occur according to that market."[2]

4.    Robinhood's first event contracts allowed users to trade on the outcome of the 2024 presidential election by offering a contract for Kamala Harris and a contract for Donald Trump. On March 17, 2025, Robinhood expanded its prediction market gaming offerings to illegal sports betting through its partnership with Kalshi while continuing to maintain the fiction that users were trading event contracts on its "Prediction Markets Hub."[3]

5.    In offering sports gambling to consumers, Robinhood creates a misleading impression either actively or by omission that Kalshi's prediction markets have the approval of state gambling control authorities and are legal when, in fact, they do not and are illegal under state law.

6.    Persons who are prone to gambling compulsions and avoid gambling websites, and who maintain brokerage accounts with Robinhood, are exposed to gambling-related communications and at times succumb to the abuses of compulsory gambling.[4]

---

[1]  Robinhood Markets, LLC, SEC Form 10-K/A, p. 13 (Dec. 31, 2025). Available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001783879/000178387926000029/hood-20251231.htm.

[2]  https://robinhood.com/us/en/support/articles/robinhood-event-contracts/ (last accessed April 2, 2026).

[3] Robinhood Markets, LLC, SEC Form 10-K/A, p. 13 (Dec. 31, 2025) (Robinhood's SEC Form 10-K states, "[o]ur customers can trade event contracts on a regulated exchange using out Prediction Markets Hub, for which we charge a commission for each contract traded."). Available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001783879/000178387926000029/hood-20251231.htm.

[4] A review of sports wagering and gambling addition studies conducted by the National Council on Problem Gambling shows that "[t]he rate of gambling problems among sports bettors is at least twice as high as among gamblers in general.... [and] the rate of problems is even higher" when sports wagering takes place online, "with one study of online sports gamblers indicating that 16% met clinical criteria for gambling disorder and another 13% showed some signs of gambling problems. *A Review of Sports Wagering & Gambling Addiction Studies Executive Summary*, NAT'L COUNCIL ON PROBLEM GAMBLING, https://www.ncpgambiing.org/wpcontent/uploads/2023/09/Spmisgambling_NCPGLitRvwExecSummary.pdf.

– 3 –

7.      Most perniciously, unlike traditional gambling sites that require cash deposits for gambling, Robinhood enables brokerage clients to gamble against margin on security positions, exposing customers to substantial losses on their stock portfolios.

8.      Regulators in Michigan, New York, and New Jersey, among others, have sent cease-and-desist letters to operators of online prediction markets.  In addition, New York State Attorney General Letitia James issued a Consumer Alert on February 2, 2026, ahead of the 2026 Super Bowl, in which she noted, "[p]rediction markets may appear as modern, high-tech platforms for speculation or 'forecasting,' but in practice, many operate as unregulated gambling without the basic protections New York consumers both deserve and expect from properly licensed operators."[5]

9.      Plaintiffs bring this class action on behalf of themselves and the classes of all others similarly situated persons (defined below) to seek relief from Robinhood's unlawful sports gambling operations.

**PARTIES**

10.      Plaintiff Prabhdeep Chehal is a resident and citizen of California.  Plaintiff Chehal wagered and lost money trading sports event contracts through Robinhood's Prediction Markets Hub.

11.      Plaintiff Viral Patel is a resident and citizen of California.  Plaintiff Patel wagered and lost money trading sports event contracts through Robinhood's Prediction Markets Hub.

12.      Plaintiff Chaim Levi is a resident and citizen of New Jersey.  Plaintiff Levi wagered and lost money trading sports event contracts through Robinhood's Prediction Markets Hub.

13.      Plaintiff Michael Gayed is a resident and citizen of New York.  Plaintiff Gayed wagered and lost money trading sports event contracts through Robinhood's Prediction Markets Hub.

14.      Plaintiff Jeffrey Ngafua is a resident and citizen of Michigan.  Plaintiff Ngafua wagered and lost money trading sports event contracts through Robinhood's Prediction Markets Hub.

15.      Defendant Robinhood Markets, Inc., is a Delaware corporation with its principal place of business located in Menlo Park, California.  Defendant Robinhood Markets, Inc. conducts business

_____

[5] https://ag.ny.gov/press-release/2026/consumer-alert-and-industry-alert-attorney-general-james-warns-new-yorkers.

– 4 –

CLASS ACTION COMPLAINT

in California and throughout the United States. Robinhood Markets, Inc., is the parent company of Robinhood Derivatives, LLC.

16. Defendant Robinhood Derivatives, LLC, is a Delaware limited liability company with its principal place of business in Menlo Park, California. Robinhood Derivatives, LLC, is a wholly owned subsidiary of Robinhood Markets, Inc. and conducts business in California and throughout the United States. According to Robinhood Markets, Inc.'s SEC Form 10-K, Robinhood Derivatives "facilitate[s] trading of futures contracts, event contracts, and options on futures contracts for our customers."[6] In its SEC Form 10-K, Robinhood Markets, Inc. refers to itself and its subsidiaries, including Robinhood Derivatives, LLC as "we," "us," "Robinhood," or the "Company," and states that "[o]ur corporate headquarters are located in Menlo Park, California."[7] Each of Robinhood Derivatives, LLC's Head of Engineering, Assistant General Counsel (Regulatory), and Deputy General Counsel conduct business within this District.

17. Robinhood Markets, Inc., is generally responsible for all of Robinhood's operations, including prediction markets, whereas Robinhood Derivatives, LLC, is specifically responsible for facilitating the sale of gaming event contracts. Because of their similarity in function, Robinhood Markets and Robinhood Derivatives are referred to globally herein as "Robinhood."

**JURISDICTION AND VENUE**

18. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332, because the proposed class consists of 100 or more potential class members; the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and minimal diversity exists.

19. This Court has personal jurisdiction over Defendants because Robinhood's principal place of business is within this District and Robinhood conducts substantial business in this District.

20. Venue properly lies in this District pursuant to 28 U.S.C. § 1391 because Defendants reside within this District within the meaning of 28 U.S.C. § 1391 and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

---

[6] Robinhood, SEC Form 10-K/A, p. 30 (Dec. 31, 2026). Available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001783879/000178387926000029/hood-20251231.htm.
[7] *Id.* at 4, 97.

## DIVISIONAL ASSIGNMENT

21.    Pursuant to Northern District of California Civil Local Rules 3-2(c), 3-2(d), and 3-5(b), assignment to the San Francisco or Oakland Division of this District is proper because Robinhood's principal office is located in San Mateo County, California, and a substantial part of the events giving rise to the claim occurred in San Mateo County.

## FACTUAL ALLEGATIONS

### I.    Robinhood Markets Offers Sports Betting, which Robinhood Refers to as Sports Event Contracts

22.    Robinhood Markets was founded in 2013 with the mission to "democratize finance for all."  Robinhood Markets was the first U.S. retail broker to offer commission-free stock trading with no account minimums, which was subsequently adopted by the industry.  Robinhood Markets began by offering equity trading on its mobile-first platform.

23.    On October 28, 2024, Robinhood introduced its first prediction market, the "Presidential Election Market."[8]  Robinhood stated, "customers will be able to trade based on their prediction for 'who will win the 2024 presidential election.' There will be two contracts to choose from–one for Kamala Harris and one for Donald Trump."

24.    Robinhood describes event contracts as "allow[ing] customers to trade on the outcome of specific events," and further stated, "[w]e believe event contracts give people a tool to engage in real-time decision-making, unlocking a new asset class that democratizes access to events as they unfold."[9]

25.    On February 3, 2025, Robinhood announced the launch of event contracts for Super Bowl LIX, which was Robinhood's first attempt to offer sports-related event contracts.[10]  The event

---

[8] https://robinhood.com/us/en/newsroom/introducing-the-presidential-election-market/ (dated October 28, 2024; last accessed April 13, 2026).
[9] *Id.*
[10] Robinhood has removed this post from its website.  However, the announcement was reported by various news sources.  *See* https://www.investopedia.com/robinhood-launches-pro-football-championship-contracts-super-bowl-kansas-city-chiefs-philadelphia-eagles-8785040 (dated February 3, 2025; last accessed April 2, 2025); https://frontofficesports.com/robinhood-to-offer-super-bowl-betting/ (dated February 3, 2025; last accessed April 2, 2025); https://fortune.com/2025/02/03/robinhood-super-bowl-bets/ (dated February 3, 2024; last accessed

contracts were made available "in all 50 states through KalshiEx, LLC, a regulated exchange," and "allow[ed] eligible customers to place trades on the outcome of the … showdown between Kansas City and Philadelphia." The announcement stated that "[e]vent contracts for the Pro Football Championship leverage the power and rigor of financial market structure to facilitate greater liquidity, transparency, and price discovery[.]" The announcement further stated, "Robinhood's mission is to democratize finance for all. With an emerging asset class like event contracts, we recognize an opportunity to better serve our customers as their interests converge across the markets, news, sports, and entertainment." A Robinhood spokesperson stated that partnering "with Kalshi was the best way for us to offer the Pro Football Championship contract in time for the game."

26.    The next day, on February 4, 2025, Robinhood announced that it had suspended the event contracts for Super Bowl LIX following the CFTC's request that Robinhood "'not permit customers to access' sports event contracts.'"[11] In response, Robinhood posted on X:

> We are disappointed by this outcome, especially given that we had been in regular communication with the CFTC about our intent and plans to offer this product. We will continue to collaborate with the CFTC as we work to roll out a more comprehensive event contracts platform later this year.

27.    On March 17, 2025, Robinhood launched its Prediction Markets Hub and began offering sports event contracts, which became available across the U.S. through KalshiEX, LLC.[12] Robinhood stated that "the hub will allow customers to trade contracts for what the upper bound of the target fed funds rate will be in May, as well as the upcoming men's and women's College Basketball Tournaments." In connection with this launch, JB Mackenzie, the Vice President and General Manager of Futures and Prediction Markets at Robinhood Markets, stated, "[w]e believe in the power of prediction markets and think they play an important role in the intersection of news, economics, politics, sports, and culture. We're excited to offer our customers a new way to participate

April 2, 2025); https://closingline.substack.com/p/the-early-line-florida-tells-offshore-sportsbooks-to-leave (dated February 2, 2025; last accessed April 2, 2025).

[11] https://robinhood.com/us/en/newsroom/robinhood-receives-formal-request-from-the-cftc-to-roll-back-the-pro-football-championship-market/ (dated February 4, 2025; last accessed April 13, 2026).

[12] https://robinhood.com/us/en/newsroom/robinhood-prediction-markets-hub/ (dated March 17, 2025; last accessed April 13, 2026).

CLASS ACTION COMPLAINT

in prediction markets and look forward to doing so in compliance with existing regulations." That same day, event contracts related to the NCAA college basketball tournaments became available.

28.    On August 19, 2025, Robinhood added professional and college football event contracts to its Prediction Markets Hub.[13] Mackenzie stated, "[a]dding pro and college football to our prediction markets hub is a no-brainer for us as we aim to make Robinhood a one-stop shop for all your investing and trading needs." Robinhood stated, "[u]nlike sports betting, where the firm sets a line, event contracts leverage the power and rigor of financial market structure and are offered in a marketplace where buyer and sellers interact to set the price."

29.    On December 16, 2025, Robinhood announced the launch of new types of sports event contracts, including "preset combos," "custom combos," and "player contracts," which mirror traditional forms of sports wagering such as point spreads, totals, player props, and parlays:

> **Preset Combos**: Customers will be able to trade preset combos for individual Pro Football games, giving them another way to turn their nuanced sports knowledge into an investing opportunity. These will be a combination of the outcomes, totals, and spreads within a single game. Like any event contract, these combos will pay $1 dollar, but only if each of the outcomes in the contract resolves correctly.

> **Custom Combos**: Early next year, we'll add support for custom combos, which will allow customers to combine up to ten outcomes into one new contract across Pro Football games.

> **Player Contracts**: Starting today, customers can track and trade individual Pro Football player performances like Anytime TD, Passing Yards, Receiving Yards, Rushing Yards, and more in real time, all in one place. Player contracts for more sports will be rolling out soon as well.[14]

30.    The announcement stated, "[t]hese tools give traders greater precision, control, and access to the events they care about most. Expanding our prediction markets is an important step forward in our goal to enable anyone to trade, invest or hold any financial asset and conduct any financial transaction through Robinhood." The announcement also reported that Robinhood's

---

[13]    https://robinhood.com/us/en/newsroom/pro-and-college-football-prediction-markets/     (dated August 19, 2025; last accessed April 13, 2026).
[14]    https://robinhood.com/us/en/newsroom/robinhood-presents-yes-no-event/ (dated December 16, 2025; last accessed April 2, 2026).

CLASS ACTION COMPLAINT

Prediction Markets Hub was "Robinhood's fastest-growing product line by revenue ever, with 11 billion contracts traded by more than 1 million customers" since its launch.

31.   On November 19, 2025, Robinhood invested in Rothera, a joint venture with Susquehanna International Group, to advance the development of an independent, CFTC-licensed exchange and clearinghouse for its prediction markets.  In connection, on January 20, 2026, Rothera acquired a 90% majority stake in MIAXdx, renamed Rothera E&C, a CFTC-licensed designated contract market, derivatives clearing organization, and swap execution facility.  Robinhood Markets' investments in Rothera and MIAXdx was intended to allow Robinhood Markets to operate prediction markets independently of Kalshi.

32.   Currently, Robinhood's Prediction Markets Hub offers event contracts across fifteen (15) different sports, including in racing, Esports, and cricket.[15]  Recently, on February 8, 2026, an estimated $285 million was traded on Robinhood's platform on the winning team of Super Bowl LX alone.[16]

33.   Robinhood describes this expanded offering of event contracts as "unlocking a new asset class."  However, unlike with its other offerings, Robinhood charges a commission of $0.01 for each event contract bought or sold on its Prediction Markets Hub.  Robinhood may also charge an exchange fee depending on the exchange the contract is traded on, which is typically $0.01 per contract.  Because Robinhood's contracts are historically sourced from Kalshi, its Prediction Markets Hub is substantially identical to the prediction market platform Kalshi offers on its own website.

34.   California law governs the Customer Agreement between Robinhood and its users and all transactions made in customer accounts.

35.   Under the terms of its agreement with Kalshi, Robinhood shares in Kalshi's "transaction fee" and earns interest on consumer funds each time an event contract is purchased on its platform. It is therefore a "winner" for all the same reasons and in the same way that Kalshi is a

---

[15] Robinhood, https://robinhood.com/us/en/prediction-markets/.
[16] MarketWatch, https://www.marketwatch.com/story/in-a-coming-out-party-for-prediction-markets-and-sports-people-just-traded-nearly-1-5-billion-on-the-super-bowl-winner-86613100.

CLASS ACTION COMPLAINT

"winner." And it acts in concert and in privity with Kalshi to secure Kalshi's winnings at the expense of individual gamblers.

36.     According to Robinhood, more than 12 billion event contracts were traded on Robinhood in 2025, including a record 8.5 billion traded in the fourth quarter alone.[17]

37.     Customers who maintain Robinhood brokerage accounts and who recognize their own susceptibility to compulsive gambling were exposed to Robinhood's ubiquitous promotional material concerning prediction markets (i.e., gambling).

38.     Robinhood enables customers to place gaming wagers against margin on their securities portfolios, exposing customers to the loss of their securities portfolios through unregulated and potentially compulsive gaming activities.

39.     In its fiscal year ending December 31, 2025, Robinhood collected $302 million in "other transaction-based revenue," a 260% increase from the previous year, which was "primarily driven by increased user activities in Prediction Markets and instant withdrawals."[18]

**II.     <u>Plaintiffs Lost Money On Robinhood's Sports Event Contracts</u>**

40.     Plaintiff Ngafua lost $25,263.80 wagering on Robinhood's Prediction Markets Hub in 2025 (including on sports event contracts) and incurred an additional $11,267.84 in fees and commissions.  In 2026, Plaintiff Ngafua lost $8,087.27 on wagering on Robinhood Prediction Markets Hub (including on sports event contracts) and incurred an additional $7,367.75 in fees and commissions.

41.     Plaintiff Patel lost $29,209.02 wagering on Robinhood's Prediction Markets Hub in 2025 (including on sports event contracts) and incurred an additional $21,388.50 in fees and commissions.

42.     On March 16, 2026, Plaintiff Levi, among other wagers, purchased two sports event contracts on Robinhood's Prediction Markets Hub and experienced losses on those wagers of $6,243.59 and $11,518.59, respectively.

---

[17] https://www.wsj.com/finance/stocks/robinhood-earnings-q4-2025-hood-stock-fd4f6c37.
[18] Robinhood Markets, Inc. Annual Report on Form 10-K/A at 110 (Feb. 20, 2026), available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001783879/000178387926000029/hood-20251231.htm.

CLASS ACTION COMPLAINT

43.     Plaintiff Gayed lost $111,382 on wagering on Robinhood's Prediction Markets Hub in 2025 (including on sports event contracts) and incurred an additional $43,257.4 in fees and commissions.

44.     Plaintiff Chehal lost $1,071 wagering on Robinhood's Prediction Markets Hub in March 2026 (including on sports event contracts) and incurred an additional $6,448 in fees and commissions.

### III.     Robinhood's Prediction Markets Hub Is an Illegal Gambling Operation

45.     In 1992, the federal government passed the Professional Amateur Sports Protection Act ("PASPA"), which effectively outlawed sports betting nationwide, with the exception of a few states.

46.     In 2018, the Supreme Court struck down PASPA in *Murphy v. National Collegiate Athletic Association*, 584 U.S. 453 (2018), holding that it violates the Constitution's "anticommandeering" principle by preventing the states from modifying or repealing its laws prohibiting sports gambling.  In *Murphy*, the Supreme Court made clear that states, not the federal government, have the right to regulate sports betting.

47.     According to CBS Sports, since *Murphy* was decided, thirty-nine (39) states and Washington D.C. have legalized some form of sports betting as of April 6, 2026.  Thirty (30) of those states have legalized online sports betting through smartphone apps or websites.[19]

48.     Despite Robinhood's performative sleight of hand in repackaging sports wagers as event contracts, these offerings are nothing more than unlawful online sports bets.  Robinhood's users place bets on the outcome of events they do not control and have no relationship to economic markets or events. A prediction market that offers sports event contracts is no different than a sports gambling book that lacks a license from any state gambling authority.

49.     Indeed, Robinhood offers sports event contracts that are functionally identical to sports bets found in traditional sportsbooks like DraftKings and FanDuel.[20]  As stated above, Robinhood

---

[19]     https://www.cbssports.com/betting/news/u-s-sports-betting-where-all-50-states-stand-on-legalizing-online-sports-betting-sites-proposed-legislation/.

[20] *See KalshiEX, LLC v. Flaherty*, 2026 U.S. App. LEXIS 9948, *20 (3d Cir. Apr. 6, 2026) (Roth, J., dissenting) (Kalshi's offerings "are virtually indistinguishable from the betting products available on online sportsbooks, such as DraftKings and FanDuel.").

– 11 –

CLASS ACTION COMPLAINT

offers sports event contracts that mirror Moneyline bets, point spreads, totals, player props, and parlays. Moreover, Robinhood offers odds and payouts that are nearly identical to the odds and payouts offered by traditional sportsbooks.

50.    Kalshi, Robinhood's prediction markets partner, has referred to its prediction markets as a gambling enterprise, advertising to consumers that they can make a "bet" on sporting events:



51.    Kalshi acknowledged before the D.C. Circuit Court of Appeals that "Congress did not want sports betting to be conducted on derivatives markets." Brief for Appellee KalshiEX LCC at 41, *KalshiEX LLC v. CFTC*, No. 24-5205 (D.C. Cir. Nov. 15, 2024).

52.    Similarly, Robinhood's Prediction Market Hub is an illegal gambling operation.

53.    In California, gambling activities and establishments are regulated by the California Gambling Control Act ("C.A. GCA"), Cal. Bus. & Prof. Code §§ 19800 *et seq*., which prohibits unregulated commercial gambling operations, except where expressly permitted by California law.

– 12 –

CLASS ACTION COMPLAINT

*See* Cal. Bus. & Prof. Code §§ 19801(d).  The California Gambling Control Commission ("C.A. Commission") is the official regulatory body over the operation of gambling establishments in California.  Neither Robinhood nor Robinhood is licensed to conduct sports betting in California.

54.    In New York, "sports wagering" is defined as:

wagering on sporting events or any portion thereof, or on the individual performance statistics of athletes participating in a sporting event, or combination of sporting events, by any system or method of wagering, including, but not limited to, in-person communication and electronic communication through internet websites accessed via a mobile device or computer, and mobile device applications; provided however that sports wagers shall include, but are not limited to, single-game bets, teaser bets, parlays, over-under bets, money line, pools, in-game wagering, in-play bets, proposition bets, and straight bets[.]

N.Y. Pari-Mutual Law §§ 1367(1)(x).

55.    Neither Robinhood nor Kalshi is licensed by the New York State Gaming Commission (the "NY Commission") to engage in sports wagering in New York.  Indeed, on October 25, 2025, the NY Commission sent Kalshi, Robinhood's partner, a cease-and-desist letter for offering illegal sports bets under the guise of prediction markets.  On October 27, 2025, Kalshi sued the NY Commission in federal court injunctive and declaratory relief. Kalshi's request for an injunction is fully briefed and awaiting a decision from the court.

56.    Neither Robinhood nor Kalshi is licensed by the Michigan Gaming Control Board to engage in sports wagering in Michigan.  Indeed, on March 5, 2026, the Attorney General of Michigan, Dana Nessel, filed a lawsuit against KalshiEX alleging that its platform violated Michigan's Lawful Sports Betting Act (MI LSBA) for offering illegal sports bets under the guise of prediction markets, the same conduct alleged against Robinhood herein.  KalshiEX removed the action to federal court. On March 18, 2026, the Michigan Attorney General moved to remand the case.  The motion to remand is in the process of being briefed.

57.    Neither Robinhood nor Kalshi is licensed by the N.J. Division of Gaming Enforcement to engage in sports wagering in New Jersey.  Indeed, on March 27, 2025, the N.J. Department of Law and Public Safety, Division of Gaming Enforcement, sent Kalshi a cease-and-desist letter for offering illegal sports bets under the guise of prediction markets, the same conduct by Robinhood alleged here. On April 6, 2026, the Court of Appeals for the Third Circuit affirmed the District Court's order

– 13 –

entering a preliminary injunction against the New Jersey Division of Gaming Enforcement from enforcing state law against Kalshi's sports-related event contracts. *See KalshiEX, LLC v. Flaherty, et al.*, No. 25-1922 (3d Cir. Apr. 6, 2026).  Plaintiffs anticipate that the New Jersey Division will seek *certiorari* and that the United States Supreme Court will ultimately consider and overrule the Third Circuit. Thus, Plaintiffs have included a claim under New Jersey law as a protective measure to toll the statute of limitations.

58.    Despite offering sports betting in various states, Robinhood has not registered for or obtained a license with any state gaming commission.  In doing so, Robinhood makes unlawful sports gambling widely available through its platform, without any safeguards mandated for licensed sports wagering operations and without oversight by any state gaming commission, exposing users to the harms of unregulated gambling.

59.    Several states, including New Jersey, New York, and Michigan allow individuals to recover funds lost in connection with an illegal gambling operation from any "winner," "stakeholder," or "person" who received their wagers under state laws modeled after the Statute of Anne – a British law passed in 1710 during the reign of Queen Anne that made certain gambling debts unenforceable.

60.    Robinhood's sports wagering operations also violate federal law.  The Dodd-Frank Act granted the CFTC discretionary power to review and prohibit six categories of derivative contracts if it concludes the contracts are "contrary to the public interest."  7 U.S.C. §§ 7a-2(c)(5)(C), (C)(i). Those categories include contracts involving "gaming" or "other similar activity determined by the [CFTC], by rule or regulation, to be contrary to the public interest."  7 U.S.C. §§ 7a-2(c)(5)(C)(i)(V)-(VI).

61.    In 2011, the CFTC promulgated 17 C.F.R. § 40.11, which states, in relevant part, "[a] registered entity shall not list for trading or accept for clearing on or through the registered entity . . . [a]n agreement, contract transaction, or swap based upon an excluded commodity . . . that involves, relates to, or references gaming, or an activity that is unlawful under any State or Federal law[.]"  17 C.F.R. § 40.11(a)(1).  This Rule's prohibition of gaming contracts remains in place, rendering Robinhood's sports wagering offerings illegal under federal law.

– 14 –

CLASS ACTION COMPLAINT

62.     Gary Gensler, the former chair of the Commodity Futures Trading Commission who helped draft a regulation promulgated under Dodd-Frank that brought swaps under federal oversight, was quoted in *Barron's* as stating that the definition of "swap" was never meant to encompass sports event contracts.  Gensler stated further, "[n]obody was intending to pre-empt the New Jersey state gaming commission . . . It was politically not discussed, and if it had been, it would have been dead in Congress.  Senators wouldn't have voted for it." [21]

## CLASS ALLEGATIONS

63.     This action is brought by Plaintiffs, for themselves and on behalf of all others similarly situated, as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).  Plaintiffs seek to represent a nationwide class and subclass under California law of all persons who lost money trading one or more sports event contracts on Robinhood (the "Class"). Further,

   a.  Plaintiff Chehal seeks to represent a subclass of all persons in California who lost money trading one or more sports event contracts on Robinhood (the "California Subclass");

   b.  Plaintiff Levi seeks to represent a subclass of all persons in New Jersey who lost money trading one or more sports event contracts on Robinhood (the "New Jersey Subclass");

   c.  Plaintiff Gayed seeks to represent a subclass of all persons in New York who lost money trading one or more sports event contracts on Robinhood (the "New York Subclass"); and

   d.  Plaintiff Ngafua seeks to represent a subclass of all persons in Michigan who lost money trading one or more sports event contracts on Robinhood (the "Michigan Subclass").

64.     Unless specifically indicated otherwise, all allegations below concerning the Class include and apply equally to the Subclasses, individually and collectively.

---

[21] Nick Devor, *Gary Gensler Paved the Way for Prediction Markets. Sports Betting Wasn't Part of the Plan*, BARRON'S, Apr. 15, 2026. Available at https://www.barrons.com/articles/sports-betting-prediction-markets-kalshi-polymarket-gensler-732c84cb.

CLASS ACTION COMPLAINT

65.    Excluded from the Class are Robinhood, Robinhood's executives and officers, and any person, firm, trust, corporation, or other entity related to or affiliated with Robinhood's partners, subsidiaries, affiliates, or joint ventures.  Plaintiffs reserve the right to modify, change or expand the Class definition after conducting discovery.

66.    The members of the Class are so numerous and dispersed that it would be impracticable to join them individually.  At all relevant times, there were thousands or more of persons who lost money trading one or more sports event contracts on Robinhood.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but can be determined through discovery.

67.    Common questions of law or fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law or fact common to Class and/or Subclasses are:

    a.    Whether, and to what extent, Robinhood's Prediction Markets Hub constitutes an illegal gambling operation;

    b.    Whether Robinhood violated the laws referenced in the causes of action herein;

    c.    Whether Robinhood's conduct was unfair, deceptive, and/or misleading in violation of state consumer protection statutes alleged herein;

    d.    Whether Robinhood's wrongful conduct caused loss or damages to Plaintiffs and the Class, and if so,

    e.    The amount of such loss or damages;

    f.    Whether Robinhood's conduct caused Robinhood to be unjustly enriched; and

    g.    Whether Plaintiffs and the Class are entitled to a reasonable award of attorneys' fees, interest, and costs of suit.

68.    Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent because they all wagered and lost money on Robinhood's platform, which operates the same as to Class members.

69.    Plaintiffs will adequately represent and protect the interests of the Class and have no interests that conflict with or are antagonistic to the interests of Class members. Plaintiffs have retained

CLASS ACTION COMPLAINT

attorneys who are experienced and capable of prosecuting class actions and complex litigation. Plaintiffs' attorneys will actively conduct and be responsible for prosecuting this litigation, and have adequate resources, experience, and commitment to litigate this matter.

70.    A class action is superior to any other method available for the fair and efficient adjudication of this controversy because it would be impractical and unduly burdensome for each of the individual Class members to bring a separate action.  Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the respective Class members to seek redress for the wrongful conduct alleged. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  Moreover, individual litigation has the potential to result in inconsistent or contradictory judgments.  A class action in this case presents fewer management problems and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

71.    Defendants have acted on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

72.    Class certification is also appropriate because there is a readily identifiable class on whose behalf this action can be prosecuted. Class members are readily ascertainable from Robinhood's records.  A notice of pendency or resolution of this class action can be provided to Class members by direct mail, email, publication notice, or other similar means.

73.    To the extent reliance is an element of any of the claims asserted herein, Plaintiffs and all Class members uniformly have relied on Robinhood's conduct.

## CAUSES OF ACTION

## COUNT I

**Violations of the California Unfair Competition Law,**

**Cal. Civ. Code §§ 17200, *et seq*.**

**On Behalf of Plaintiff Chehal, the Class, and California Subclass**

74.    Plaintiffs, including Prabhdeep Chehal, allege and incorporate all other factual allegations set forth herein.

CLASS ACTION COMPLAINT

75. Robinhood and Plaintiffs are "persons" within the meaning of the California UCL. Plaintiffs assert this cause of action against Defendants for unlawful, unfair and fraudulent business practices; and unfair, deceptive, untrue and misleading advertising, as defined by California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. (the "UCL"). The UCL prohibits any "unlawful, unfair or fraudulent business act or practice," each of which is separately actionable.

76. Defendants' conduct violates the UCL, as the acts and practices of Defendants constitute a common and continuing course of conduct by means of "unlawful" "unfair" and "fraudulent" business acts or practices within the meaning of the UCL.

77. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice," each of which is separately actionable.

78. Robinhood has violated the UCL's proscription against engaging in "unlawful" conduct by virtue of its violations of, inter alia, the following laws:

a. California's Gambling Control Act (Cal. Bus. & Prof. Code §§ 19800, et seq.): Sections 19801 and 19850 of the Gambling Control Act provide that unless licensed, state law prohibits commercially operated gambling facilities; that no new gambling establishment may be opened except upon affirmative vote of the electors; that all gambling operations and persons having significant involvement therein shall be licensed, registered, and regulated; and that all persons who deal, operate, carry on, conduct, maintain or expose for play any gambling game shall apply for and obtain a valid state gambling license. Neither Robinhood nor Kalshi has applied for or obtained any state gambling license, and therefore Robinhood violates California's Gambling Control Act. As the California legislature reaffirmed in 2008, "no person in this state has a right to operate a gambling enterprise except as may be expressly permitted by the laws of this state." Cal. Bus. & Prof. Code § 19801(d).

b. California Penal Code Section 330, which provides in relevant part that "[e]very person who ... conducts, either as owner or employee ... any banking or percentage game played with ... any device, for money, checks, credit, or other representative of value ... is guilty of a misdemeanor." CAL. PENAL CODE § 330. A "banking game" refers

– 18 –

to a situation where the "House" is a participant in the game, taking on all contestants, paying all winners, and collecting from all losers. See *Sullivan v. Fox*, 189 Cal. App. 3d 673, 678 (1987). And a "percentage game" refers to a situation where the house collects a portion of the bets or wagers made by contestants, but is not directly involved in game play. See *id*. at 679. Robinhood operates both illegal banking games when it trades through Kalshi and illegal percentage games when it takes fees on bets made by consumers.

    c.  California Penal Code Section 337a, which prohibits additional conduct, including: i) "Pool selling or bookmaking, with or without writing, at any time or place." CAL. PENAL CODE § 337a(a)(1); (ii) "[R]eceiv[ing], hold[ing], or forward[ing] . . . in any manner whatsoever, any money . . . staked, pledged, bet or wagered, or to be staked, pledged, bet or wagered, or offered for the purpose of being staked, pledged, bet or wagered, upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of person or animal, or between persons, animals, or mechanical apparatus, or upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever." *Id*. at (a)(3). "[A]t any time or place, record[ing], or register[ing] any bet or bets, wager or wagers, upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of person or animal, or between persons, animals, or mechanical apparatus, or upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever." *Id*. at (a)(4). Robinhood acts as a bookmaker, and accepts pooled bets on the results of sports events.

    d.  California Penal Code § 337j(a)(2): Robinhood violates Cal. Penal Code § 337j(a)(2) by "receiv[ing], directly or indirectly, any compensation or reward or any percentage or share of the revenue, for keeping, running, or carrying on any controlled game." Robinhood directly receives compensation by taking a share of consumers' bets.

79. Robinhood's conduct is "fraudulent" because Robinhood has, through the affirmative misstatements and/or omissions alleged herein, tricked consumers into believing the operation of its gambling website is lawful in California, when it is not, causing Plaintiffs and Class members to lose millions of dollars in the aggregate. Robinhood falsely represented its products as "investments" or "trading" when, in reality, they are unlawful gambling.

80. Defendants' conduct is unfair, because its utility, if any, is greatly outweighed by the harm it causes to Plaintiffs and the Class; and because it is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers; and because it violates established public policy as alleged herein. As alleged herein, Robinhood makes unlawful sports gambling widely available through its platform without a requisite license from the CA Commission and, in connection, made false representations about the nature of its offering to users.

81. As a direct and proximate cause of Defendants' violations of the UCL, Plaintiffs and the Class suffered an injury in fact and have suffered monetary harm. Defendants, on the other hand, have been unjustly enriched. The Court should require Defendants to make restitution to Plaintiffs and the Class and/or disgorge its ill-gotten profits pursuant to Business & Professions Code § 17203.

82. Defendants' unlawful, unfair, and fraudulent business practices, as described herein, present a continuing threat to Plaintiffs and the general public in that Defendants' deceptive conduct is ongoing. Plaintiffs further seek an order enjoining Defendant from engaging in any unlawful or inequitable acts and practices as alleged herein.

83. Plaintiffs and the Class seek equitable relief because they have no other adequate remedy at law. Legal remedies available to Plaintiffs and Class Members are inadequate because they are not equally prompt and certain and in other ways as efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs and Class Members failed to sufficiently adduce evidence to support an award of damages. Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money the defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the

– 20 –

CLASS ACTION COMPLAINT

original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the statutes herein entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law. Due to these differences in proof and certainty, equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law for damages. Even if legal remedies may be available, Plaintiffs seek equitable remedies in the alternative to legal remedies which are as of yet uncertain.

84. Legal remedies available to Plaintiffs and Class Members are inadequate because they do not address likely future harms. As of the date of this filing, Robinhood continues to operate its unlawful gambling business. If Robinhood is not enjoined from continuing to operate its unlawful gambling business, Robinhood will continue to injure Plaintiffs and Class Members through the misconduct alleged herein.

## <u>COUNT II</u>

### Violations of the California Consumer Legal Remedies Act,

### Cal. Civ. Code §§ 1750, *et seq.*

### On Behalf of Plaintiff Chehal, the Class, and the California Subclass

85. Plaintiffs allege and incorporate all other factual allegations set forth herein.

86. The conduct of Defendants alleged above constitutes an unfair method of competition or unfair or deceptive act or practice in violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA").

87. As described above, while engaging in trade or commerce within the State of California during the time period relevant hereto, Defendants:

    a. Facilitated illegal sports wagering on an online sports gambling platform that has not obtained a license from the C.A. Commission, rendering such operations unlawful;

    b. falsely represented its unlawful online sports gambling platform as legal and in compliance with regulations; and

    c. falsely labeling its illegal gambling platform as "investments" or "trading."

– 21 –

CLASS ACTION COMPLAINT

88. Defendants' conduct constitutes unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer, in violation of the CLRA, as follows:

  a. Cal. Civ. Code § 1770(a)(2) ("Misrepresenting the source, sponsorship, approval, or certification of goods or services.");

  b. Cal. Civ. Code § 1770(a)(5) ("Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.");

  c. Cal. Civ. Code § 1770(a)(7) ("Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."); and

  d. Cal. Civ. Code § 1770(a)(14) ("Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.").

89. The misrepresentations and omissions set forth above are material facts that a reasonable person would have considered important in deciding whether or not to purchase event contracts from Defendants. Plaintiffs and the Classes justifiably and uniformly acted or relied upon Defendants' misrepresentations and omissions to their detriment.

90. Plaintiffs and the Class have been, and/or continue to be, injured as a direct and proximate result of Defendants' violations of the CLRA.

91. Plaintiffs are entitled to pursue a claim against Defendants on behalf of themselves and the Class to enjoin Defendants from continuing their unfair or deceptive acts or practices under Cal. Civ. Code § 1780(a) and § 1781, as well as to pursue costs and attorneys' fees under § 1780(e).

92. Pursuant to Cal. Civ. Code § 1782, Plaintiffs are serving on Defendants a CLRA notice letter. If Defendants fail to rectify these issues within the time period specified therein, Plaintiffs will

– 22 –

CLASS ACTION COMPLAINT

amend this Complaint to assert claims for additional relief, including damages and punitive damages pursuant to Cal. Civ. Code § 3294.

## COUNT III

### Violations of New Jersey's Statute of Anne, N.J. Rev. Stat. § 2A:40-5 & 6

### On Behalf of Plaintiff Levi and the New Jersey Subclass

93.     Plaintiff Levi re-alleges and incorporates all other factual allegations set forth herein.

94.     In New Jersey, sports gambling operations are subject to regulation and licensing under the New Jersey Sports Wagering Act ("NJ SWA"), which only permits licensed entities to offer sports wagering in New Jersey.  *See* N.J. Rev. Stat. § 5:12A-11.  The NJ SWA requires entities conducting online sports wagering to hold licenses from the NJ Commission.  *See* N.J. Rev. Stat. § 5:12A-10.  In particular, the NJ SWA provides that "[n]o sports pool or online sports pool shall be offered or made available for wagering to the public by any entity other than a sports wagering license[.]"  N.J. Rev. Stat. § 5:12A-11(c).  Online sports wagering is defined as, "a sports wagering operation in which wagers on sports events are made through computers or mobile or interactive devices and accepted at a sports wagering lounge through an online gaming system which is operating pursuant to a sports wagering license issued by the division or racing commission."  N.J. Stat. § 5:12A-10.  Indeed, on March 27, 2025, the N.J. Department of Law and Public Safety, Division of Gaming Enforcement, sent Kalshi, Robinhood's partner, a cease-and-desist letter for offering illegal sports bets under the guise of prediction markets, the same conduct by Robinhood alleged here.  Neither Robinhood nor Kalshi is licensed by the New Jersey Division to offer a platform for sports wagering in New Jersey.

95.     N.J. Rev. Stat. § 2A:40-5 states:

"If any person shall lose any money, goods, chattels or other valuable thing, in violation of section 2A:40-1 of this title, and shall pay or deliver the same or any part thereof to the winner, or to any person to his use, or to a stakeholder, such person may sue for and recover such money, or the value of such goods, chattels, or other valuable thing, from such winner, or from such depositary, or from such stakeholder, whether the same has been delivered or paid over by such stakeholder or not, in a civil action provided such action is brought within 6 calendar months after payment or delivery."

96.     N.J. Rev. Stat. § 2A:40-6 states:

– 23 –

"If the person who shall lose and pay such money, or lose and deliver such thing or things as aforesaid, shall not, within the time aforesaid, without collusion, sue for the money or other thing or things so lost and paid, or delivered, any other person may sue for and recover the same, with costs of suit, from such winner, depositary or stakeholder as aforesaid; the one moiety thereof to the use of the person suing for the same, and the other moiety to the use of the state; provided the action is instituted within 6 calendar months from and after the expiration of the time limited in section 2A:40-5 of this title for the loser to sue for the same."

97. Plaintiff Levi qualifies as a "person" authorized to sue for the recovery of losses from Robinhood's illegal gambling within the Meaning of N.J. Rev. Stat. 2A:40-5 and -6.

98. Robinhood is a gambling "winner," "depository," and/or "stakeholder" within the meaning of N.J. Rev. Stat. 2A-40-5 and -6.

99. Plaintiff Levi and the New Jersey Subclass wagered and lost money on Robinhood's platform, which was falsely represented as lawful and in compliance with regulations. These trades were executed in New Jersey.

100. As stated in Paragraph 56, the Court of Appeals for the Third Circuit affirmed the District Court's order entering a preliminary injunction against the New Jersey Division of Gaming Enforcement from enforcing state law against Kalshi's sports-related event contracts. *See KalshiEX, LLC v. Flaherty, et al.*, No. 25-1922 (3d Cir. Apr. 6, 2026). Plaintiffs anticipate that the United States Supreme Court will ultimately overrule the Third Circuit. Thus, Plaintiffs have included a claim under New Jersey law to toll the statute of limitations.

101. Accordingly, Plaintiff Levi and the New Jersey Subclass seek to recover damages, treble damages, equitable relief, and attorney's fees and costs to remedy Robinhood's wrongful conduct.

## COUNT IV

**Violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, et seq.**

**On Behalf of Plaintiff Levi and the New Jersey Subclass**

102. Plaintiff Levi re-alleges and incorporates all other factual allegations set forth herein.

103. Defendants are each a "person" as defined in the New Jersey Consumer Fraud Act ("NJCFA"). N.J.S.A. § 56:8-1(d).

104. The NJCFA states in pertinent part:

– 24 –

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practices....

N.J.S.A. § 56:8-2.

105.    The NJCFA further defines "merchandise" to include "services or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann. § 56:8-1(c).

106.    As described above, while engaging in trade or commerce within the State of New Jersey during the time period relevant hereto, Defendants:

  a.    facilitated illegal sports wagering on an online sports gambling platform that has not obtained a license from the N.J. Commission, rendering such operations unlawful;

  b.    facilitated illegal sports wagering on college sport or athletic events that take place in New Jersey or on a sport or athletic event in which any New Jersey college team participates regardless of where the event took place in violation of N.J. Const. Art. IV, § 7, ¶ 2(D);

  c.    falsely represented its unlawful online sports gambling platform as legal and in compliance with regulations; and

  d.    falsely represented its products as "investments" or "trading" when, in reality, they are unlawful gambling

107.    Plaintiff Levi and the New Jersey Subclass have been and continue to be injured as a direct and proximate result of Defendants' violations of the NJCFA.

108.    Plaintiff Levi and the New Jersey Subclass are entitled to pursue a claim against Robinhood pursuant to N.J.S.A. §§56:8-2.11, 56:8-2.12 and/or 56:8-19 for damages, treble damages, equitable relief, and attorney's fees and costs to remedy Robinhood's violations of the NJCFA.

– 25 –

CLASS ACTION COMPLAINT

**COUNT V**

**Violations of New York General Business Law, N.Y. Gen. Bus. Law §§ 349, 350**

**On Behalf of Plaintiff Gayed and the New York Subclass**

109.     Plaintiff Gayed re-alleges and incorporates all other factual allegations set forth herein.

110.     The New York Pari-Mutual Wagering and Breeding Law ("NY PML") provides, "[n]o entity shall directly or indirectly operate an unlicensed sports wagering platform in the State of New York, or advertise or promote such unlicensed platform to persons located in the state of New York." N.Y. P.M.L. § 1367-a(4)(b).  In connection with mobile sports betting, the NY P.M.L. provides, "[n]o entity shall administer, manage, or otherwise make available a mobile sports wagering platform to persons located in New York state unless licensed with the commission." N.Y. P.M.L. § 1367-a(2)(a). Aside from wagering offered through licensed entities, New York declares unlawful "[a]ll wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever[.]" N.Y. Gen. Oblig. § 5-401.

111.     N.Y. Gen. Bus. Law § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

112.     N.Y. Gen. Bus. Law § 350 further declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

113.     As described above, while engaging in consumer-oriented trade or commerce within the State of New York during the time period relevant hereto, Robinhood:

    a.   facilitated illegal sports wagering on an online sports gambling platform that has not obtained a license from the N.Y. Commission, rendering such operations unlawful;

    b.   falsely represented its unlawful online sports gambling platform as legal and in compliance with regulations; and

    c.   falsely represented its products as "investments" or "trading" when, in reality, they are unlawful gambling.

114.     The foregoing deceptive acts and practices were directed at consumers.

CLASS ACTION COMPLAINT

115.   As a result of Robinhood's false, misleading, and deceptive misrepresentations and omissions, Plaintiff Gayed and the members of the New York Subclass have suffered and continue to suffer economic injury.

116.   Plaintiff Gayed and members of the New York Subclass suffered an ascertainable loss caused by Robinhood's misrepresentations.

117.   On behalf of himself and other members of the New York Subclass, Plaintiff Gayed seeks to enjoin the unlawful facts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three-times actual damages, and reasonable attorneys' fees.

## COUNT VI

### Violations of New York's Statute of Anne, N.Y. Gen. Oblig. Law § 5-419

### On Behalf of Plaintiff Gayed and the New York Subclass

118.   Plaintiff Gayed re-alleges and incorporates all other factual allegations set forth herein.

119.   Robinhood operated a sports gambling platform in the State of New York without an applicable license from the NY Commission in violation of N.Y. PML § 1367-a(2)(a).

120.   Pursuant to New York's Statute of Anne, N.Y. Gen. Oblig. Law § 5-419, Plaintiff Gayed and the New York Subclass are entitled to recover losses resulting from trading event contracts on Robinhood's platform.

121.   N.Y. Gen. Oblig. Law § 5-419 provides:

> Any person who shall pay, deliver or deposit any money, property or thing in action, upon the event of any wager or bet prohibited, may sue for and recover the same of the winner or person to whom the same shall be paid or delivered, and of the stakeholder or other person in whose hands shall be deposited any such wager, bet or stake, or any part thereof, whether the same shall have been paid over by such stakeholder or not, and whether any such wager be lost or not.

122.   Plaintiff Gayed and the New York Subclass wagered and lost money on Robinhood's platform, which was falsely represented as lawful and in compliance with regulations.  These trades were executed in New York.

123.   Accordingly, Plaintiff Gayed and the New York Subclass seek to recover damages, treble damages, equitable relief, and attorney's fees and costs to remedy Robinhood's wrongful conduct.

– 27 –

CLASS ACTION COMPLAINT

## COUNT VII

### Violations of Michigan's Statute of Anne, Mich. Comp. Laws Serv. § 600.2939

### On Behalf of Plaintiff Ngafua and the Michigan Subclass

124.    Plaintiff Ngafua re-alleges and incorporates all other factual allegations set forth herein.

125.    Michigan law contains a general prohibition against gambling that makes it illegal to accept money, directly or indirectly, with the understanding that money will be paid "contingent upon the result of any race, contest, or game or upon the happening of any event not known by the parties to be certain[.]"  Mich. Comp. Laws Serv. § 750.301. Sports gambling operations are subject to regulation and licensing under the Michigan Lawful Sports Betting Act ("MI LSBA"), Mich. Comp. Laws Serv. § 432.401, which requires licenses to offer sports betting through the internet.  "Internet sports betting" is defined as "operating, conducting, or offering for play sports betting through the internet." Mich. Comp. Laws Serv. § 432.403(s).  "Sports betting," in Michigan, "means to operate, conduct, or offer for play wagering conducted under this act on athletic events and other events approved by the board. Sports betting includes, but is not limited to, single-game bets, teaser bets, parlays, over-under, moneyline, pools, exchange betting, in-game betting, proposition bets, and straight bets." Mich. Comp. Laws Serv. § 432.403(bb).  The MI LSBA provides that "[a] person shall not … [o]ffer internet sports betting in this state if the person is not a sports betting operator" licensed by the state.  Mich. Comp. Laws Serv. § 432.404.  Robinhood facilitated the operation of a sports gambling platform in the State of Michigan that has not obtained a license from the Michigan Gaming Control Board in violation of Mich. Comp. Laws Serv. § 432.413(1)(a).

126.    Pursuant to Michigan's Statute of Anne, Mich. Comp. Laws Serv. § 600.2939, Plaintiff Ngafua and the Michigan Subclass are entitled to recover losses resulting from trading event contracts on Robinhood's platform.

127.    Mich. Comp. Laws Serv. § 600.2939(1) provides:

In any suit brought by the person losing any money or goods, against the person receiving the same, when it appears from the complaint that the money or goods came to the hands of the defendant by gaming, if the plaintiff makes oath before the court in which such suit is pending, that the money or goods were lost by gaming with the defendant as alleged in the complaint, judgment shall be rendered that the plaintiff recover damages to the amount of the said money or goods, unless the defendant makes

– 28 –

oath that he did not obtain the same, or any part thereof by gaming with the plaintiff; and if he so discharges himself, he shall recover of the plaintiff his costs; but the plaintiff may at his election, maintain and prosecute his action according to the usual course of proceedings in such actions at common law.

128.   Plaintiff Ngafua and the Michigan Subclass wagered and lost money on Robinhood's platform, which was falsely represented as lawful and in compliance with regulations.  These trades were executed in Michigan.

129.   Accordingly, Plaintiff Ngafua and the Michigan Subclass seek to recover damages, treble damages, equitable relief, and attorney's fees and costs to remedy Robinhood's wrongful conduct.

## COUNT VIII

**Violations of the Michigan Consumer Protection Act, Mich. Comp. Laws.**

**Serv. § 445.901, et seq.**

**On Behalf of Plaintiff Ngafua and the Michigan Subclass**

130.   Plaintiff Ngafua re-alleges and incorporates all other factual allegations set forth herein.

131.   The Michigan Consumer Protection Act ("Michigan CPA") provides that "[u]nfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce are unlawful . . ." Mich. Comp. Laws Serv. § 445.903(1).

132.   Defendants are each a "person" as defined in the Michigan CPA, Mich. Comp. Laws Serv. § 445.902(1)(d).

133.   Defendants' conduct constitutes "trade" or "commerce" as defined in the Michigan CPA, Mich. Comp. Laws Serv. § 445.902(1)(g).

134.   As described above, while engaging in trade or commerce within the State of Michigan during the time period relevant hereto, Defendants:

    a.   facilitated illegal sports wagering on an online sports gambling platform that has not obtained a license from the Michigan Gaming Control Board, rendering such operations unlawful; and

    b.   falsely represented its unlawful online sports gambling platform as legal and in compliance with regulations; and

– 29 –

      c.  falsely represented its products as "investments" or "trading" when, in reality, they are unlawful gambling.

135.    The aforesaid methods, acts, and practices constitute unfair, unconscionable, or deceptive acts or practices in the conduct of any trade or commerce in violation of the Michigan CPA, including, but not limited to, the following:

      a.  "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have." (Mich. Comp. Laws Serv. § 445.903(1)(c));

      b.  "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." (Mich. Comp. Laws Serv. § 445.903(1)(e)); and

      c.  "Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented." (Mich. Comp. Laws Serv. § 445.903(1)(g)).

136.    Plaintiff Ngafua and the other members of the Michigan Subclass have been and continue to be injured as a direct and proximate result of Defendants' violations of the Michigan CPA.

137.    Defendants' conduct constitutes fraud and is gross, oppressive, aggravated, and involves breach of trust or confidence.

138.    Plaintiff Ngafua, on behalf of himself and the Michigan Subclass, seeks actual damages, injunctive relief, other equitable relief, costs, and attorneys' fees as permitted by Mich. Comp. Laws Serv. § 445.911.

## COUNT IX

### Unjust Enrichment

### On Behalf of the Class

139.    Plaintiffs re-allege and incorporate all other factual allegations set forth herein.

140.    Plaintiffs and the Class conferred a benefit on Robinhood by trading event contracts on Robinhood's platform and paying commission fees per contract. Robinhood knowingly offered illegal sports bets and unjustly profited on Plaintiffs and the Class.

– 30 –

CLASS ACTION COMPLAINT

141. In the absence of a contract, Plaintiffs and the Class have no adequate remedy at law.

142. Robinhood's unjust enrichment can be remedied by ordering Defendants to provide restitution, and to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and the Class, all proceeds received from Plaintiffs and the Class as a result of unlawful and/or inequitable conduct described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court award the following relief:

143. Certify this action as a class action, appoint Plaintiffs as the Class representatives, and designate the undersigned as Class counsel;

144. Declare Robinhood's conduct unlawful;

145. Enjoin Robinhood from the unlawful conduct alleged herein;

146. Award Plaintiffs and the Class (and Subclasses) damages under common law and/or by statute, including treble and/or punitive damages;

147. Award Plaintiffs and the Class (and Subclasses) restitution and/or disgorgement;

148. Award Plaintiffs attorney's fees, costs, and pre-judgment and post-judgment interest; and

149. Grant such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class demand a trial by jury on all triable issues.

Dated: April 22, 2026                    **WOLF POPPER LLP**

By:    */s/ Philip M. Black*
Philip M. Black (SBN 308619)
Robert Finkel (*pro hac vice* to be filed)
570 Lexington Ave.
New York, NY 10022
pblack@wolfopper.com
rfinkel@wolfpopper.com
Telephone: (212) 759-4600

*Attorneys for Plaintiffs and the Proposed Class*

CLASS ACTION COMPLAINT