Abigail A. Barrera (SBN 301746)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8262
ABarrera@gibsondunn.com

Eugene Scalia (SBN 151540)
Jonathan C. Bond (*pro hac vice*)
Nick Harper (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: 202.955.8500
EScalia@gibsondunn.com
JBond@gibsondunn.com
NHarper@gibsondunn.com

*Counsel for Defendants Robinhood Markets, Inc. and Robinhood Derivatives, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

PRABHDEEP CHEHAL, VIRAL PATEL, CHAIM LEVI, MICHAEL GAYED, and JEFFREY NGAFUA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ROBINHOOD MARKETS, INC. and ROBINHOOD DERIVATIVES, LLC,

Defendants.

Case No. 3:26-cv-03415-EMC

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

CLASS ACTION

Date: August 20, 2026
Time: 1:30 p.m.
Courtroom 5

**HON. EDWARD M. CHEN**

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on August 20, 2026, at 1:30 p.m. before the Honorable Edward M. Chen of the United States District Court for the Northern District of California, Courtroom 5, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Robinhood Markets, Inc. and Robinhood Derivatives, LLC (collectively, "Robinhood") will, and hereby do, move this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* for an order that (1) compels Plaintiffs Prabhdeep Chehal, Viral Patel, Chaim Levi, and Michael Gayed to submit their claims against Robinhood to arbitration as required by the arbitration agreement that Plaintiffs voluntarily executed with Robinhood, and (2) stays these proceedings pending arbitration.

As set forth in greater detail in the accompanying memorandum of points and authorities, the arbitration agreement signed by Plaintiffs is a valid agreement and Plaintiffs' claims fall within the scope of that agreement. Robinhood respectfully requests that this Court grant Robinhood's motion to compel arbitration, order Plaintiffs to arbitrate this dispute, and stay this litigation, including discovery, pending arbitration.

The motion is based upon this notice of motion; the memorandum of points and authorities in support thereof that follows; the proposed order filed concurrently herewith; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

DATED: June 29, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jonathan C. Bond*
Jonathan C. Bond

*Counsel for Defendants Robinhood Markets, Inc. and Robinhood Derivatives, LLC*

## TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 2

A. Plaintiffs' Lawsuit ..... 2

B. Plaintiffs' Arbitration Agreement ..... 3

ARGUMENT ..... 4

I. The FAA Governs The Parties' Arbitration Agreement ..... 4

II. The Arbitration Agreement Is Valid ..... 5

III. The Arbitration Agreement Covers Plaintiffs' Claims And Bars Their Class Allegations ..... 6

IV. The Arbitration Agreement Is Enforceable By Robinhood Markets, Inc. ..... 8

V. The FAA Requires Staying Proceedings Against Robinhood Pending Arbitration ..... 13

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995)....4

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)....9

*Bender v. Twilio Inc.*,
2025 WL 2308484 (N.D. Cal. Aug. 11, 2025)....12

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022)....5

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006)....9

*Dey v. Robinhood Mkts., Inc.*,
780 F. Supp. 3d 882 (N.D. Cal. 2025)....8

*Drosos v. GMM Glob. Money Managers Ltd.*,
2023 WL 7545067 (N.J. Super. Ct. Nov. 14, 2023)....9, 10

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023)....5

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)....1

*Erasmus v. LegalZoom.com, Inc.*,
2025 WL 1122237 (D.N.J. Apr. 15, 2025)....5

*Ford Motor Warranty Cases*,
17 Cal. 5th 1122 (2025)....11

*Franklin v. Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021)....9, 11, 12, 13

*Garcia v. Pexco, LLC*,
11 Cal. App. 5th 782 (2017)....13

*Gibson v. City of Portland*,
165 F.4th 1265 (9th Cir. 2026)....8

*Grand Wireless, Inc. v. Verizon Wireless, Inc.*,
748 F.3d 1 (1st Cir. 2014)....4, 5

*In re Henson*,
869 F.3d 1052 (9th Cir. 2017)....11

*In re Jan. 2021 Short Squeeze Trading Litig.*,
2025 WL 1865945 (S.D. Fla. Apr. 8, 2025)....12

**Page(s)**

*Herrera v. Cathay Pac. Airways Ltd.*,
104 F.4th 702 (9th Cir. 2024)....................13

*Hirsch v. Amper Fin. Servs., LLC*,
215 N.J. 174 (2013)....................9, 10, 11

*Hirschfeld Prods., Inc. v. Mirvish*,
673 N.E.2d 1232 (N.Y. 1996)....................10

*Hunt v. Meta Platforms, Inc.*,
735 F. Supp. 3d 1133 (N.D. Cal. 2024)....................12

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013)....................9

*Kroskey v. Elevate Labs, LLC*,
2025 WL 1507091 (N.D. Cal. May 27, 2025)....................9

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019)....................4

*Metalclad Corp. v. Ventana Env't Organizational P'ship*,
109 Cal. App. 4th 1705 (2003)....................11, 13

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)....................5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)....................7

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023)....................5, 6

*Prograph Int'l Inc. v. Barhydt*,
928 F. Supp. 983 (N.D. Cal. 1996)....................9, 10

*Ragone v. Atlantic Video at Manhattan Ctr.*,
595 F.3d 115 (2d Cir. 2010)....................13

*Revis v. Schwartz*,
140 N.Y.S. 3d 68 (App. Div. 2020)....................9, 10

*Shivkov v. Artex Risk Sols., Inc.*,
974 F.3d 1051 (9th Cir. 2020)....................7

*Sicily by Car S.p.A. v. Hertz Glob. Holdings, Inc.*,
2015 WL 2403129 (D.N.J. May 20, 2015)....................11

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....................13

**Statutes** **Page(s)**

7 U.S.C. § 1a ........................................................................................................2

7 U.S.C. § 2 ........................................................................................................2, 8

9 U.S.C. § 1 ........................................................................................................1

9 U.S.C. § 2 ........................................................................................................1, 4, 5

9 U.S.C. § 3 ........................................................................................................1, 4, 13

9 U.S.C. § 4 ........................................................................................................1, 4

**Regulation**

17 C.F.R. § 166.5 ........................................................................................................8

**Other Authorities**

CFTC Amicus Br., *KalshiEX, LLC v. Schuler*, No. 26-3196 (6th Cir. May 12, 2026), http://tinyurl.com/4e52xer5 ........................2

CFTC, *Order of Designation: In the Matter of the Application of KalshiEX LLC for Designation as a Contract Market* (Nov. 3, 2020) ........................2

FINRA, *Entities We Regulate* (last viewed June 29, 2026), https://perma.cc/Z9X9-LZ6T........................8

NFA, *Compliance Rules* (effective June 30, 2020), https://perma.cc/ZCW5-D4X2........................8

NFA, *Robinhood Derivatives LLC, Profile 0424278*, https://tinyurl.com/3w2cbt3b........................2

Prediction Markets, 91 Fed. Reg. 35,806 (June 12, 2026)........................2

## INTRODUCTION

Plaintiffs Prabhdeep Chehal, Viral Patel, Chaim Levi, Michael Gayed, and Jeffrey Ngafua bring this nine-count putative class action complaint against Robinhood Markets, Inc. and Robinhood Derivatives, LLC (collectively, "Robinhood") under centuries-old state anti-gambling statutes, state consumer fraud statutes, and common-law principles of unjust enrichment. According to Plaintiffs, those laws entitle them to recover their losses on trades of federally regulated derivatives that they voluntarily executed on a federally designated exchange operated by KalshiEX LLC. But all but one of those Plaintiffs are barred from pursuing those claims in court at all: When signing up to trade derivatives through Robinhood's platform, four of the five Plaintiffs (the "Assenting Plaintiffs")—all but Ngafua of Michigan—elected to agree to submit any dispute arising out of these trades to a binding arbitration, not litigation in this or any other court.

This Court should enforce that arbitration agreement against the four Assenting Plaintiffs. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, requires courts to "enforce arbitration agreements according to their terms." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018); *see* 9 U.S.C. §§ 2-4. The Assenting Plaintiffs expressly and affirmatively opted in to arbitration after clear notice that they could decline. And the terms of the arbitration agreement they voluntarily entered encompass "[a]ny controversy or claim arising out of" the very "account[s]" and "transactions" that are the subject of Plaintiffs' claims. Decl. of Vincent Martin ¶ 5, Exs. C, D. The Assenting Plaintiffs should be held to the agreements they voluntarily executed, and their claims against Robinhood should be stayed pending arbitration.*

---

* On June 25, 2026, Plaintiffs filed an unopposed motion to consolidate this case with three other pending cases asserting similar claims against Robinhood under various States' laws: *Mazza v. Robinhood Markets, Inc.*, No. 3:26-cv-5610-AGT (filed June 10, 2026); *Collar v. Robinhood Markets, Inc.*, No. 3:26-cv-5724-TSH (filed June 12, 2026); and *Austin v. Robinhood Markets, Inc.*, No. 3:26-cv-5978-TSH (filed June 17, 2026). On June 27 the parties in this case jointly submitted a Stipulation and Proposed Order providing that, if the Court grants the motion to consolidate or determines that all of the actions are related, Robinhood will file a single, consolidated motion to compel arbitration in all four cases, which the parties will brief according to an agreed-upon schedule. Dkt. 29. As of this filing, the Court has not acted on the motion to consolidate or the Stipulation and Proposed Order. Pursuant to this Court's June 12 order directing Robinhood to file its motion to compel in this case (*Chehal*) no later than June 29, Dkt. 23 at 2, Robinhood is filing this motion to compel only with respect to this case. But, if the Court subsequently approves the parties' jointly proposed plan for consolidated briefing on a motion to compel arbitration, Robinhood will file a consolidated motion to compel according to the schedule adopted by the Court that will supersede this motion addressing only *Chehal*.

## BACKGROUND

### A. Plaintiffs' Lawsuit

Plaintiffs' lawsuit concerns event contracts that they voluntarily traded on Kalshi through Robinhood's platform. Dkt. 1 ("Compl.") ¶ 1. Event contracts are a type of derivative that is governed by the Commodity Exchange Act ("CEA") and regulated by the Commodity Futures Trading Commission ("CFTC"). *See* 7 U.S.C. § 1a(47)(A)(ii) (defining "swaps" to include event contracts). Like other derivatives, event contracts traded on CFTC-designated exchanges have long been subject to the CFTC's "exclusive jurisdiction." 7 U.S.C. § 2(a)(1)(A); *see also* CFTC Amicus Br., *KalshiEX, LLC v. Schuler*, No. 26-3196 (6th Cir. May 12, 2026), http://tinyurl.com/4e52xer5; Prediction Markets, 91 Fed. Reg. 35,806 (June 12, 2026) (notice of proposed rulemaking). As relevant here, Robinhood Derivatives offers a CFTC-registered platform that facilitates trades of event contracts on a CFTC-designated exchange operated by Kalshi in compliance with the CEA. NFA, *Robinhood Derivatives LLC, Profile 0424278*, https://tinyurl.com/3w2cbt3b; *see also* CFTC, *Order of Designation: In the Matter of the Application of KalshiEX LLC for Designation as a Contract Market* (Nov. 3, 2020).

Nevertheless, Plaintiffs claim that Robinhood is liable under the laws of several States for facilitating their trades on Kalshi's exchange. Compl. ¶¶ 4-7, 53-57. Plaintiffs allege that they are residents of four States: California (two plaintiffs), New Jersey, New York, and Michigan. Dkt. 1 ¶¶ 10-14. One of the California plaintiffs (Chehal) asserts one claim under the California Unfair Competition Law and one claim under the California Consumer Legal Remedies Act. *Id.* ¶¶ 74-92 (Counts I and II). The New Jersey, New York, and Michigan plaintiffs (Levi, Gayed, and Ngafua, respectively) each assert one claim under their State's consumer fraud law and one claim under their State's Statute of Anne, which are anti-gambling laws modeled on a 1710 English statute. *Id.* ¶¶ 93-138 (Counts III-VIII). And all Plaintiffs (including the other California plaintiff, Patel) assert an unjust-enrichment claim without specifying under which State's law the claim is brought. *Id.* ¶¶ 139-142 (Count IX).

Plaintiffs bring all of their claims against both Robinhood Derivatives, LLC and Robinhood Markets, Inc. Plaintiffs allege that they traded event contracts on Kalshi's CFTC-regulated exchange through Robinhood Derivatives' Prediction Markets Hub, through which users with Robinhood Derivatives accounts can access Kalshi's exchange. Compl. ¶¶ 10-14; *see also id.* ¶ 16 (alleging that

Robinhood Derivatives facilitates the event contract trading they challenge); *id.* ¶ 34 (discussing "customer accounts" with Robinhood Derivatives). They allege that Robinhood Markets, as the parent company of Robinhood Derivatives, is "generally responsible for all of Robinhood's operations, including prediction markets." *Id.* ¶¶ 15, 17. Plaintiffs otherwise make little effort to differentiate between the two entities, referring to them collectively as "Robinhood" throughout the complaint. *Id.*

**B. Plaintiffs' Arbitration Agreement**

Four of the five Plaintiffs (Chehal, Patel, Levi, and Gayed) executed an identical arbitration agreement ("Arbitration Agreement") with Robinhood Derivatives. The Arbitration Agreement was presented to Plaintiffs separately from any other terms or conditions, and it was presented on its own screen that Plaintiffs needed to navigate past as part of the process of setting up their derivatives accounts on Robinhood Derivatives' platform. *See* Martin Decl. ¶¶ 4-6. The screen containing the Arbitration Agreement was titled "RHD arbitration agreement" and displayed the text of the agreement immediately underneath, with the sentence "[a]ny controversy or claim arising out of or relating to my futures account, transactions with Robinhood Derivatives … or the breach thereof, shall be settled by arbitration" immediately visible. Martin Decl. ¶ 5, Exs. C, D. At the bottom of the screen were the options to "Agree" or "Continue without agreeing." *Id.* Only Ngafua chose not to agree to arbitration. *Id.* ¶¶ 8-9, Ex. E.

Robinhood did not require any of the Plaintiffs to execute the Arbitration Agreement. Although Robinhood Derivatives requires users like the Plaintiffs here to agree to certain terms and conditions to trade event contracts—including those in the Futures Client Agreement, which governs the trading of event contracts on Robinhood's platform—the Arbitration Agreement is *not* one of those required terms or conditions. Martin Decl. ¶¶ 4-6. The Arbitration Agreement states in bold and capital letters that "you need not sign this agreement to open or maintain an account with Robinhood Derivatives, LLC." *Id.* Ex. C (emphasis and capitalization omitted). And as mentioned, Robinhood Derivatives offers users the choice *either* (A) to execute the Arbitration Agreement by selecting "Agree" or (B) to select "Continue without agreeing." *Id.* ¶ 5. Users must select one of those options to continue, but they are free to choose either one: If users select "Continue without agreeing," they can finish setting

up their account and trade event contracts in the same manner as users who execute the Arbitration Agreement. *Id.* ¶ 7.

Users including the Assenting Plaintiffs here who select "Agree" thereby voluntarily opt in to binding arbitration of "[a]ny controversy or claim arising out of or relating to my futures account, transactions with Robinhood Derivatives, LLC pursuant to the Futures Client Agreement between us or the breach thereof." Martin Decl. Ex. C. Each Assenting Plaintiff further agreed that they were waiving their "right to sue in a court of law." *Id.*

## ARGUMENT

The FAA requires enforcing valid arbitration agreements according to their terms and, when timely invoked, staying litigation in favor of arbitration. The FAA's mandate applies here because the Arbitration Agreement between each of the Assenting Plaintiffs and Robinhood Derivatives is valid and squarely encompasses the Assenting Plaintiffs' claims against Robinhood Derivatives. And the Arbitration Agreement applies to the Assenting Plaintiffs' claims against Robinhood Markets under basic principles of agency law and equitable estoppel. The Court should compel Plaintiffs who voluntarily signed the Arbitration Agreement to arbitrate their claims against Robinhood and stay litigation of those Plaintiffs' claims pending arbitration.

### I. The FAA Governs The Parties' Arbitration Agreement

The FAA provides that, in a "contract evidencing a transaction involving commerce," any written provision "to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4." 9 U.S.C. § 2. The statute thus requires courts to "enforce arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 183 (2019); *see also* 9 U.S.C. §§ 3-4. The FAA's reach is "expansive," "coinciding with that of the Commerce Clause," *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274 (1995), and the statute thereby embodies "the national policy favoring arbitration," *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 6 (1st Cir. 2014).

The FAA plainly applies to the Arbitration Agreement here. Each plaintiff's Arbitration Agreement is a "contract evidencing a transaction involving [interstate] commerce." 9 U.S.C. § 2. The

Assenting Plaintiffs, residents of California, New York, and New Jersey, entered into the Arbitration Agreement with Robinhood Derivatives in connection with Plaintiffs' opening of an account to trade derivatives, including event contracts through Robinhood's online platform. Compl. ¶¶ 10-13, 16. In doing so, each of the Assenting Plaintiffs agreed to the terms of the Arbitration Agreement, which requires Plaintiffs "to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2; *see* Martin Decl. Ex. C. The Arbitration Agreement therefore must be enforced so long as it is "valid" and "the claim asserted comes within" the terms of the agreement. *Grand Wireless*, 748 F.3d at 6.

## II. The Arbitration Agreement Is Valid

The Arbitration Agreement is valid and enforceable under any potentially applicable state law. This case involves "so-called 'clickwrap' agreements, in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 513 (9th Cir. 2023). Courts in all of the States where the Assenting Plaintiffs reside "routinely find clickwrap agreements enforceable." *Id.* (discussing California law and citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)); *see also, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) ("New York and California apply substantially similar rules for determining whether the parties have mutually assented" to the terms of a clickwrap contract. (citation omitted)); *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703-04 (2d Cir. 2023) (In New York, "[a] reasonably prudent internet or smartphone user is on inquiry notice of contractual terms where the terms are presented in a clear and conspicuous way" and there is a "manifestation of mutual assent," including through clickwrap agreements.); *Erasmus v. Legal-Zoom.com, Inc.*, 2025 WL 1122237, at *5 (D.N.J. Apr. 15, 2025) (Clickwrap agreements are enforceable in New Jersey "because by requiring a physical manifestation of assent, a user is said to be put on inquiry notice of the terms assented to." (citation omitted)).

The Arbitration Agreement is a type of clickwrap agreement and so presumptively enforceable under California, New York, and New Jersey law. Robinhood Derivatives "presents users with" the text of the Arbitration Agreement on screen, and "users must [click] a box explicitly stating 'I agree'" to be bound by that separate agreement. *Oberstein*, 60 F.4th at 513; *see* Martin Decl. ¶¶ 5-6, Ex. D.

Users must decide whether to agree to the Arbitration Agreement *separately* from agreeing to the Futures Client Agreement that all Robinhood Derivatives users must execute. Martin Decl. ¶¶ 3-4. Users are presented with a binary choice—"Agree" to the Arbitration Agreement, or "Continue without agreeing"—and are informed that they may create a Robinhood Derivatives account *without* assenting to arbitration. *Id.* ¶¶ 4-5, Exs. C, D. And users must affirmatively choose one option or the other to proceed; they cannot simply skip past that choice and are not deemed to have agreed to arbitration by default. *Id.* ¶ 6. The agreement is therefore enforceable.

The same conclusion follows even without the presumption of validity for "clickwrap" agreements. *Oberstein*, 60 F.4th at 514-15 (citation omitted). An arbitration agreement on a webpage is valid so long as it provides "reasonably conspicuous notice of the terms" and "the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* The "notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Oberstein*, 60 F.4th at 515 (citation omitted). And the user's "click of a button" suffices to establish assent so long as the user is "explicitly notif[ied] … of the legal significance of the action." *Id.* (citation omitted).

The Arbitration Agreement easily satisfies both criteria. The Assenting Plaintiffs had reasonably conspicuous notice of the terms of the Arbitration Agreement because its terms—that "[a]ny controversy or claim arising out of" Plaintiffs' "account" or "transactions" "shall be settled by arbitration"—were prominently visible during the account-opening process, separately from the Futures Client Agreement that all Robinhood Derivatives users must accept to create an account. Martin Decl. ¶ 5, Ex. D. And the Assenting Plaintiffs provided "an unambiguous manifestation of assent": Each was required to "[click] a box explicitly stating" either "Agree" or "Continue without agreeing" before opening their account with Robinhood Derivatives. *Oberstein*, 60 F.4th at 513; *see* Martin Decl. ¶¶ 5-7. The Assenting Plaintiffs all chose "Agree" instead of "Continue without agreeing." *Id.* ¶¶ 8-9, Exs. D, E. There can be no question that Plaintiffs voluntarily entered an enforceable arbitration agreement.

**III. The Arbitration Agreement Covers Plaintiffs' Claims And Bars Their Class Allegations**

The Assenting Plaintiffs' claims fall squarely within the four corners of the Arbitration Agreement they each voluntarily entered. Under the FAA, whether an arbitration agreement governs a

dispute is controlled by "the parties' intentions," "but those intentions are generously construed as to issues of arbitrability." *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1063 (9th Cir. 2020) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). The "language in the [arbitration] Clause" governs, and any ambiguity "must [be] resolve[d] in favor of arbitration." *Id.* at 1064.

Here, the Arbitration Agreement unambiguously requires arbitration of Plaintiffs' claims. The agreement requires arbitration of "[*a*]*ny* controversy or claim *arising out of or relating to* [the user's] futures account, transactions with Robinhood Derivatives, LLC pursuant to the Futures Client Agreement between us or the breach thereof." Martin Decl. Ex. C (emphases added). All of the Assenting Plaintiffs' claims against Robinhood directly target transactions that they allegedly executed through their accounts with Robinhood and pursuant to their Futures Client Agreement. *Id.* Ex. A at 12-13, Ex. B at 12-13. All of the claims stem from alleged losses on transactions that the plaintiffs purportedly executed "on Robinhood's Prediction Markets Hub." Compl. ¶¶ 40-44. Their Statute of Anne claims allege that Plaintiffs "are entitled to recover losses resulting from trading event contracts on Robinhood's platform." *E.g.*, Compl. ¶ 120. The state consumer-fraud claims allege that Robinhood made "misrepresentations and omissions" about the legality of event contracts available through the Robinhood Derivatives platform "that a reasonable person would have considered important in deciding whether or not to purchase event contracts." Compl. ¶ 89; *see also id.* ¶¶ 79, 106, 113, 115-116. And the unjust-enrichment claim alleges that Plaintiffs "conferred a benefit on Robinhood by trading event contracts on Robinhood's platform." Compl. ¶¶ 140-142. Even if there were any doubt, the presumption in favor of arbitration would resolve it. *See Shivkov*, 974 F.3d at 1064.

In their opposition to deferring Robinhood's motion-to-dismiss deadline, Plaintiffs suggested that their claims are not covered by the Arbitration Agreement because they executed a separate arbitration agreement with Robinhood Financial LLC (Robinhood Financial) and Robinhood Securities, LLC (Robinhood Securities) that, "pursuant to FINRA rules, carves out from any arbitration agreement claims against 'Robinhood' pending as class actions." Dkt. 22 at 3. But that carve-out is inapplicable twice over. First, the agreement expressly limits the term "Robinhood" in *that* document to Robinhood Financial and Robinhood Securities, as Plaintiffs' own exhibit confirms. Dkt. 22-2 at 1. It does not

mention Robinhood Derivatives. Second, as Plaintiffs admit, that carve-out from arbitration exists because of FINRA's rules, but those rules have no application to Robinhood Derivatives. FINRA, a self-regulatory organization (SRO) established under the securities laws, regulates securities broker-dealers like Robinhood Financial and Robinhood Securities. *See, e.g.*, FINRA, *Entities We Regulate* (last viewed June 29, 2026), https://perma.cc/Z9X9-LZ6T. FINRA does *not* have any authority under the commodities laws to regulate trading in derivatives like event contracts or CFTC-regulated entities like Robinhood Derivatives. Rather, the CFTC has "exclusive jurisdiction" over event-contract trading and entities that facilitate that trading. 7 U.S.C. § 2(a)(1)(A); *see also* Martin Decl. Ex. C (discussing applicable CFTC regulations). The SRO for the derivatives industry, designated by the CFTC, is the National Futures Association (NFA). Unlike FINRA, which requires the entities it regulates (like Robinhood Financial and Robinhood Securities) to provide a class-action carve-out for arbitration agreements, neither the CFTC nor the NFA imposes such a requirement. *See generally* NFA, *Compliance Rules* (effective June 30, 2020), https://perma.cc/ZCW5-D4X2. The CFTC and the NFA do not forbid arbitration of claims that are pending in putative class actions; as relevant here, they require only that arbitration agreements not be a "condition of using the Member['s] . . . services," *id.* Rule 2-53, and be agreed to separately, 17 C.F.R. § 166.5(c). As already explained, the Arbitration Agreement satisfies those requirements. Martin Decl. ¶¶ 4-6. The separate arbitration agreement Plaintiffs cited therefore is irrelevant here.

## IV. The Arbitration Agreement Is Enforceable By Robinhood Markets, Inc.

Although Assenting Plaintiffs' claims focus entirely on alleged transactions they effected through their Robinhood Derivatives accounts, their complaint also includes Robinhood Markets, the parent company of Robinhood Derivatives, as a defendant. Plaintiffs assert identical claims against both entities and "refe[r]" to them "globally" as "Robinhood" throughout the complaint because of their alleged "similarity in function." Compl. ¶ 17. Those threadbare claims against Robinhood Markets will fail on the pleadings under Ninth Circuit precedent. *Gibson v. City of Portland*, 165 F.4th 1265, 1289-90 (9th Cir. 2026) ("permitting parties to file pleadings that do not tie factual averments against specific parties to individual causes of action infringes Rule 8"); *see also Dey v. Robinhood Mkts., Inc.*, 780 F. Supp. 3d 882, 896 (N.D. Cal. 2025) (dismissing claims against Robinhood Markets

for this reason). But regardless, the complaint's attempt to impose liability on Robinhood Markets for its alleged relationship with Robinhood Derivatives means that Robinhood Markets can enforce its subsidiary's arbitration agreement. The "Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870 (9th Cir. 2021) (citing *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013), in turn citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). As relevant here, courts frequently enforce arbitration agreements as to nonsignatories under state-law principles of agency and equitable estoppel. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). Both doctrines preclude Assenting Plaintiffs from seeking to circumvent their arbitration agreement by filing tagalong claims against Robinhood Markets.

***Agency.*** Principles of agency law require the Assenting Plaintiffs to arbitrate their claims against Robinhood Markets. It is "well settled that 'arbitration may be compelled by a non-signatory against a signatory to a contract on the basis of agency principles.'" *Drosos v. GMM Glob. Money Managers Ltd.*, 2023 WL 7545067, at *7 (N.J. Super. Ct. Nov. 14, 2023) (New Jersey law, quoting *Hirsch v. Amper Fin. Servs., LLC*, 215 N.J. 174, 192 (2013)); *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 990-91 (N.D. Cal. 1996) (same, under California law); *Revis v. Schwartz*, 140 N.Y.S. 3d 68, 80-81 (App. Div. 2020) (same, under New York law). "Agency principles have been held to permit nonsignatory corporations to compel arbitration under arbitration clauses signed by their corporate parents, subsidiaries, or affiliates, at least when the allegations against the nonsignatory corporation do not differ substantially from those against its signatory affiliate." *Kroskey v. Elevate Labs, LLC*, 2025 WL 1507091, at *4 (N.D. Cal. May 27, 2025) (quoting *Prograph*, 928 F. Supp. at 990).

Judge Davila's recent decision in *Kroskey* is illustrative. There, a plaintiff claimed that Elevate Labs and MindSnacks violated "various federal and California state privacy laws" through their operation of a mobile meditation application called Balance. 2025 WL 1507091, at *1. Plaintiff had executed an arbitration agreement with Elevate Labs, but not MindSnacks. *Id.* at *4. The court compelled arbitration of the claims against MindSnacks as well, however, because the plaintiff "allege[d] that Defendant Elevate Labs is an 'affiliate' of Defendant MindSnacks, and that together, they 'jointly

operate, control, program, and run the Balance App.'" *Id.* at *5. And the plaintiff then proceeded "to refer to the two companies jointly as 'Defendants' in the remainder of the Complaint." *Id.* Because the plaintiff brought "identical claims arising from identical conduct, the court f[ound] that MindSnacks may enforce the arbitration agreement here as an affiliate of the signatory." *Id.*

Courts routinely reach the same conclusion in the particular context here: where a plaintiff asserts claims against both a parent and subsidiary, only one of which was a direct party to the arbitration agreement, and the allegations against each do not "differ substantially." *Prograph*, 928 F. Supp. at 990 (applying California law); *Hirsch*, 215 N.J. at 193 (approving appellate "decision to compel arbitration" under New Jersey law "given the *agency* relationship between the parent and subsidiary insurance corporations in the litigation" (emphasis added)); *Drosos*, 2023 WL 7545067, at *8-9 (discussing *Hirsch* and compelling arbitration under agency principles under New Jersey law); *see also Revis*, 140 N.Y.S. 3d at 81 (explaining that under New York law "[g]iven the allegations in the complaint, the nonsignatory defendants . . . [we]re entitled to enforce the arbitration provisions" pursuant to agency principles); *Hirschfeld Prods., Inc. v. Mirvish*, 673 N.E.2d 1232, 1233 (N.Y. 1996) (compelling arbitration under New York law against nonsignatory owner of a company where "Plaintiff's complaint is directed to misconduct related to" the company).

Robinhood Markets is entitled to enforce the Arbitration Agreement here for the same reasons. Plaintiffs allege that Robinhood Markets is the parent company of Robinhood Derivatives and "is generally responsible for all of Robinhood's operations, including prediction markets." Compl. ¶ 17. And Plaintiffs assert identical claims against both entities and "refe[r]" "globally" to both entities as "Robinhood" throughout the complaint because of their alleged "similarity in function." *Id.* The only substantive allegations specific to Robinhood Markets are two statements attributed to an alleged employee of Robinhood Markets, which "do not differ substantially" from any of the other allegedly misleading statements of which Plaintiffs complain. *Id.* ¶¶ 27-28; *Prograph*, 928 F. Supp. at 990. The Assenting Plaintiffs cannot seek to hold Robinhood Markets vicariously liable for the alleged acts of its subsidiary while simultaneously refusing to arbitrate under the contract they voluntarily executed with that subsidiary that governs the subject matter of the Assenting Plaintiffs' claims against both defendants.

***Equitable Estoppel.*** Equitable estoppel similarly requires compelling arbitration as to the Assenting Plaintiffs' claims against Robinhood Markets because Plaintiffs cannot seek to hold Robinhood Markets liable for their transactions with Robinhood Derivatives while simultaneously avoiding their Arbitration Agreement with Robinhood Derivatives. The point of equitable estoppel is to "preven[t] a party from playing fast and loose with its commitment to arbitrate, honoring it when advantageous and circumventing it to gain undue advantage." *Franklin*, 998 F.3d at 871.

That principle is well-established under California, New York, and New Jersey law. Under California law, if the "substance" of a party's claims against a third party are "intimately founded in and intertwined with the underlying contract obligations," that third party may move to compel arbitration of the claim even though the third party did not sign the underlying contract. *Franklin*, 998 F.3d at 871, 875; *see also Ford Motor Warranty Cases*, 17 Cal. 5th 1122, 1131 (2025) (same) (quoting *Metalclad Corp. v. Ventana Env't Organizational P'ship*, 109 Cal. App. 4th 1705, 1717 (2003)). New York law is materially the same. *In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017) ("there is no material difference between New York and California's equitable estoppel laws"). And while New Jersey law requires a showing of detrimental "reliance" by the nonsignatory, *see Hirsch*, 215 N.J. at 192-93, that reliance requirement is satisfied by the necessity of "defend[ing] against claims which essentially arise" out of contracts with a corporate affiliate. *Sicily by Car S.p.A. v. Hertz Glob. Holdings, Inc.*, 2015 WL 2403129, at *5 (D.N.J. May 20, 2015) (compelling arbitration on that basis under New Jersey law). Thus, Robinhood Markets is entitled to invoke arbitration under the doctrine of equitable estoppel if "the substance of [Plaintiffs'] claims" is "rooted" in their "relationship with [Robinhood Derivatives], which is governed by the Arbitration Agreement." *Franklin*, 998 F.3d at 875.

The Assenting Plaintiffs' claims against Robinhood Markets satisfy that test. Their entire theory is that Robinhood Markets and Robinhood Derivatives are both liable for transactions executed through accounts at Robinhood Derivatives—accounts governed by the Assenting Plaintiffs' agreements with Robinhood Derivatives, which include the Arbitration Agreement. Compl. ¶¶ 16, 34-44. And their claims that those transactions were somehow fraudulent and illegal even though the CEA and CFTC authorize and exclusively regulate the trading of event contracts will require examining the

terms to which the Assenting Plaintiffs agreed with Robinhood Derivatives. Those terms disclose the applicability of the CEA and CFTC regulations to event contract trading. *See* Martin Decl. Ex. A at 1, 3, Ex. B at 1, 3. Plaintiffs' attempted artful pleading around those terms is irrelevant; what matters is the "substance of [Plaintiffs'] claims," *Franklin*, 998 F.3d at 875. And here, the Assenting Plaintiffs' claims cannot be "fully viable without reference" to their agreements with Robinhood Derivatives, which include the Arbitration Agreement. *Bender v. Twilio Inc.*, 2025 WL 2308484, at *6 (N.D. Cal. Aug. 11, 2025).

Courts have applied equitable estoppel in materially similar circumstances, including as to different claims against Robinhood Markets itself. In *In re January 2021 Short Squeeze Trading Litigation*, for example, the plaintiffs brought claims against Robinhood Markets and its two broker-dealer subsidiaries, Robinhood Financial and Robinhood Securities, alleging misrepresentations and violations of the securities laws. 2025 WL 1865945, at *1 (S.D. Fla. Apr. 8, 2025) (applying California law). Although Robinhood Markets was not a party to the arbitration agreement between the plaintiffs and Robinhood Financial and Robinhood Securities, the court compelled arbitration as to Robinhood Markets under equitable-estoppel principles after denying class certification. *Id.* at *4 n.4. The court reasoned that "Robinhood Markets, as the parent Robinhood entity … may enforce [the] arbitration clause" because the plaintiffs' claims "relate to securities transactions that were executed through Robinhood accounts governed by" the contract with Robinhood Securities and Robinhood Financial, which had a "preexisting relationship" with Robinhood Markets. *Id.* at *4 n.4.

Many other cases are in accord. In *Hunt v. Meta Platforms, Inc.*, Judge Pitts compelled a plaintiff to arbitrate claims against Google and Meta even though neither party was a named signatory to the arbitration agreement. 735 F. Supp. 3d 1133, 1138 (N.D. Cal. 2024). The plaintiff had entered an arbitration agreement only with H&R Block. But the plaintiff's "mail and wire fraud claims against Google and Meta depend[ed] on" whether his contract with H&R Block "was fraudulent." *Id.* at 1136-39. The court accordingly held that the claims against Google and Meta were arbitrable as well. Likewise, in *Franklin*, the Ninth Circuit held that a hospital could compel a nurse to arbitrate her statutory labor and employment claims against the hospital, even though the hospital itself had no arbitration agreement with the nurse. 998 F.3d at 875. As the court explained, the nurse had executed an

arbitration agreement with a staffing agency that had placed her with the hospital, and the "substance of [the nurse's] claims against the Hospital" were so "intertwined" with her staffing-agency contract "that it would be unfair for [the nurse] to avoid arbitration." *Id.* The list goes on. *See, e.g.*, *Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782, 786 (2017) (nonsignatory defendant could invoke an arbitration clause to compel a signatory to arbitrate when the claims against the nonsignatory were "intimately founded in and intertwined with" the underlying agreement); *Ragone v. Atlantic Video at Manhattan Ctr.*, 595 F.3d 115, 126-27 (2d Cir. 2010) (nonsignatory to an arbitration agreement could compel a signatory to arbitrate a dispute when "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed"); *Metalclad*, 109 Cal. App. 4th at 1717 (nonsignatory parent holding company could compel arbitration when plaintiff alleged tort claims that were "intimately founded in and intertwined with" agreement with subsidiary); *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 709-10 (9th Cir. 2024) (nonsignatory airline could compel arbitration because plaintiffs' claims against an airline "turn[] on whether" a third-party vendor "abided" by the terms of a contract, and so "this interconnectedness … makes equitable estoppel appropriate"). The same result should follow here.

## V. The FAA Requires Staying Proceedings Against Robinhood Pending Arbitration

Because Assenting Plaintiffs agreed to arbitrate their claims through a valid and enforceable arbitration agreement, the Court should stay this lawsuit pending the resolution of any arbitration that Assenting Plaintiffs bring against Robinhood. The FAA provides that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Thus, "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration," the court "must" stay the proceeding. *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024). A stay is thus required here.

## CONCLUSION

The Court should order the Assenting Plaintiffs to submit their claims to arbitration. The Court should also stay their claims pending arbitration.

Dated: June 29, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jonathan C. Bond*

Abigail A. Barrera (SBN 301746)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8262
ABarrera@gibsondunn.com

Eugene Scalia (SBN 151540)
Jonathan C. Bond (*pro hac vice*)
Nick Harper (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: 202.955.8500
EScalia@gibsondunn.com
JBond@gibsondunn.com
NHarper@gibsondunn.com

*Counsel for Defendants Robinhood Markets, Inc. and Robinhood Derivatives, LLC*