Abigail A. Barrera (SBN 301746)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8262
ABarrera@gibsondunn.com

Eugene Scalia (SBN 151540)
Jonathan C. Bond (*pro hac vice*)
Nick Harper (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: 202.955.8500
EScalia@gibsondunn.com
JBond@gibsondunn.com
NHarper@gibsondunn.com

*Counsel for Defendants Robinhood Markets, Inc. and Robinhood Derivatives, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re ROBINHOOD PREDICTION MARKET LITIGATION<br>______________________________<br>This Document Relates To:<br>ALL ACTIONS. | Lead Case No. 3:26-cv-03415-EMC<br><u>CLASS ACTION</u><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br>Date: To be set by the Court.<br>Courtroom 5<br>**HON. EDWARD M. CHEN** |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on a date to be set by the Court, before the Honorable Edward M. Chen of the United States District Court for the Northern District of California, Courtroom 5, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Robinhood Markets, Inc. and Robinhood Derivatives, LLC (collectively, "Robinhood") will, and hereby do, move this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, for an order that (1) compels Plaintiffs Prabhdeep Chehal, Viral Patel, Chaim Levi, Michael Gayed, Matthew Mazza, Timothy Collar, Jason Jordan, Christopher Reyes, Kevin Austin, and Rick Gregory to submit their claims against Robinhood to arbitration as required by the arbitration agreements that Plaintiffs voluntarily executed with Robinhood, and (2) stays these proceedings pending arbitration.

As set forth in greater detail in the accompanying memorandum of points and authorities, the arbitration agreements signed by Plaintiffs are valid agreements and Plaintiffs' claims fall within the scope of those agreements. Robinhood respectfully requests that this Court grant Robinhood's motion to compel arbitration, order Plaintiffs to arbitrate this dispute, and stay this litigation, including discovery, pending arbitration.

The motion is based upon this notice of motion; the memorandum of points and authorities in support thereof that follows; the proposed order filed concurrently herewith; the pleadings, records, and papers on file in these actions; oral argument of counsel; and any other matters properly before the Court.

DATED: July 20, 2026

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Jonathan C. Bond
Jonathan C. Bond

*Counsel for Defendants Robinhood Markets, Inc. and Robinhood Derivatives, LLC*

# TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 1

- A. Plaintiffs' Lawsuits ..... 1
- B. Plaintiffs' Arbitration Agreements ..... 3

ARGUMENT ..... 5

- I. The FAA Governs The Parties' Arbitration Agreement ..... 5
- II. The Arbitration Agreement Is Valid ..... 6
- III. The Arbitration Agreement Covers Plaintiffs' Claims ..... 8
- IV. The Arbitration Agreement Is Enforceable By Robinhood Markets ..... 10
- V. The FAA Requires Staying Proceedings Against Robinhood Pending Arbitration ..... 16

CONCLUSION ..... 16

## TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) ....................6

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009) ....................11

*AutoNation Fin. Servs. Corp. v. Arain*,
592 S.E.2d 96 (Ga. Ct. App. 2003) ....................11

*Bender v. Twilio Inc.*,
2025 WL 2308484 (N.D. Cal. Aug. 11, 2025)....................14

*Bowie v. Clear Your Debt, LLC*,
523 F. App'x 315 (6th Cir. 2013)....................11

*Charles v. Portfolio Recovery Assocs., LLC*,
2024 WL 1672350 (9th Cir. Apr. 18, 2024)....................8, 9

*Dey v. Robinhood Mkts., Inc.*,
780 F. Supp. 3d 882 (N.D. Cal. 2025) ....................11

*Drosos v. GMM Glob. Money Managers Ltd.*,
2023 WL 7545067 (N.J. Super. Ct. App. Div. Nov. 14, 2023)....................11, 12

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) ....................1

*Erasmus v. LegalZoom.com, Inc.*,
2025 WL 1122237 (D.N.J. Apr. 15, 2025) ....................6

*Ford Motor Warranty Cases*,
17 Cal. 5th 1122 (2025)....................13

*Franklin v. Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021)....................11, 13, 14, 15

*Garcia v. Pexco, LLC*,
11 Cal. App. 5th 782 (2017)....................15

*Gibson v. City of Portland*,
165 F.4th 1265 (9th Cir. 2026)....................10

*Grand Wireless, Inc. v. Verizon Wireless, Inc.*,
748 F.3d 1 (1st Cir. 2014) ....................6

*Heller v. Blue Aerospace, LLC*,
112 So. 3d 635 (Fla. Dist. Ct. App. 2013)....................11, 12

*Herrera v. Cathay Pac. Airways Ltd.*,
104 F.4th 702 (9th Cir. 2024)....................16

**Page(s)**

*Hirsch v. Amper Fin. Servs., LLC*,
215 N.J. 174 (2013) ........ 11, 12, 14

*Hirschfeld Prods., Inc. v. Mirvish*,
673 N.E.2d 1232 (N.Y. 1996) ........ 12

*Hunt v. Experian Info. Sols. Inc.*,
2025 WL 104324 (M.D. Ga. Jan. 15, 2025) ........ 6

*Hunt v. Meta Platforms, Inc.*,
735 F. Supp. 3d 1133 (N.D. Cal. 2024) ........ 15

*Integrated Health Servs. at Cent. Fla., Inc. v. Est. of DeSantis ex rel. DeSantis*,
407 So. 3d 547 (Fla. Dist. Ct. App. 2025) ........ 14

*In re January 2021 Short Squeeze Trading Litig.*,
2025 WL 1865945 (S.D. Fla. Apr. 8, 2025) ........ 14, 15

*Koechli v. BIP Int'l, Inc.*,
870 So. 2d 940 (Fla. Dist. Ct. App. 2004) ........ 15

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ........ 11

*Kroskey v. Elevate Labs, LLC*,
2025 WL 1507091 (N.D. Cal. May 27, 2025) ........ 11, 12

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019) ........ 5

*Lankford v. Orkin Exterminating Co., Inc.*,
597 S.E.2d 470 (Ga. Ct. App. 2004) ........ 12

*Massage Envy Franchising, LLC v. Doe*,
339 So. 3d 481 (Fla. Dist. Ct. App. 2022) ........ 6

*Metalclad Corp. v. Ventana Env't Organizational P'ship*,
109 Cal. App. 4th 1705 (2003) ........ 13, 16

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ........ 6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ........ 8

*O'Brien & Assocs. Co., LPA v. East Worthington, LLC*,
2023 WL 6307762 (Ohio Ct. App. Sept. 28, 2023) ........ 13

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ 6, 7, 8

*Order Homes, LLC v. Iverson*,
685 S.E.2d 304 (Ga. Ct. App. 2009) ........ 14

**Page(s)**

*Price v. Ernst & Young, LLP*,
617 S.E.2d 156 (Ga. Ct. App. 2005) ....................16

*Prograph Int'l Inc. v. Barhydt*,
928 F. Supp. 983 (N.D. Cal. 1996) ....................11, 12, 13

*Ragone v. Atlantic Video at Manhattan Ctr.*,
595 F.3d 115 (2d Cir. 2010)....................15

*Ranazzi v. Amazon.com, Inc.*,
46 N.E.3d 213 (Ohio Ct. App. 2015) ....................6

*Revis v. Schwartz*,
192 A.D.3d 127 (N.Y. App. Div. 2020)....................11

*Shivkov v. Artex Risk Sols., Inc.*,
974 F.3d 1051 (9th Cir. 2020)....................8, 9

*Sicily by Car S.p.A. v. Hertz Glob. Holdings, Inc.*,
2015 WL 2403129 (D.N.J. May 20, 2015) ....................14

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ....................16

*Soloway v. CIM Grp.*,
237 A.D.3d 576 (N.Y. App. Div. 2025)....................13

*Thibault v. Heartland Recreational Vehicles, LLC*,
2019 WL 1274729 (S.D. Ohio Mar. 19, 2019) ....................12

*Townsend v. Stand Up Mgmt., Inc.*,
2019 WL 3729266 (N.D. Ohio Aug. 8, 2019) ....................15

*Wu v. Uber Techs., Inc.*,
43 N.Y.3d 288 (2024) ....................6

**Statutes**

7 U.S.C. § 1a ....................2

7 U.S.C. § 2....................2, 10

9 U.S.C. § 1....................1

9 U.S.C. § 2....................1, 5, 6

9 U.S.C. § 3....................1, 6, 16

9 U.S.C. § 4....................1, 6

**Regulations**

17 C.F.R. § 166.5(c)....................10

**Page(s)**

91 Fed. Reg. 35,806 (June 12, 2026) ....................2

**Other Authorities**

CFTC Amicus Br., *KalshiEX, LLC v. Schuler*, No. 26-3196 (6th Cir. May 12, 2026), http://tinyurl.com/4e52xer5 ....................2

CFTC, *Order of Designation: In the Matter of the Application of KalshiEX LLC for Designation as a Contract Market* (Nov. 3, 2020) ....................2

FINRA, *Entities We Regulate*, https://perma.cc/Z9X9-LZ6T....................9

NFA, *Compliance Rules* (effective June 30, 2020), https://perma.cc/ZCW5-D4X2....................10

NFA, *Robinhood Derivatives LLC, Profile 0424278*, https://tinyurl.com/3w2cbt3b ....................2

## INTRODUCTION

Plaintiffs in these four consolidated putative class actions bring suit against Robinhood Markets, Inc. and Robinhood Derivatives, LLC (collectively, "Robinhood") under centuries-old state anti-gambling statutes, state consumer-protection statutes, and common-law principles of unjust enrichment. According to Plaintiffs, those laws entitle them to recover their losses on trades of federally regulated derivatives that they voluntarily executed on a federally designated exchange operated by KalshiEX LLC. All but one of those Plaintiffs, however, are barred from pursuing those claims in court at all: Ten of the 11 Plaintiffs (the "Assenting Plaintiffs") elected to agree to submit any dispute arising out of these trades to binding arbitration, not litigation in this or any other court.

This Court should enforce those arbitration agreements against the ten Assenting Plaintiffs. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, requires courts to "enforce arbitration agreements according to their terms." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018); *see* 9 U.S.C. §§ 2-4. The Assenting Plaintiffs expressly and affirmatively opted in to arbitration after clear notice that they could decline. And the terms of the arbitration agreements they voluntarily entered encompass "[a]ny controversy or claim arising out of" the very "account[s]" and "transactions" that are the subject of Plaintiffs' claims. Decl. of Vincent Martin ¶ 5, Exs. E, F. The Assenting Plaintiffs should be held to the agreements they voluntarily executed, and their claims against Robinhood should be stayed pending arbitration.[1]

## BACKGROUND

### A. Plaintiffs' Lawsuits

Plaintiffs' four consolidated suits—mostly copy-and-paste complaints, filed in rapid succession by two separate law firms—concern event contracts that they voluntarily traded on Kalshi through Robinhood's platform. *Chehal*, Dkt. 1 ("*Chehal* Compl.") ¶ 1; *Mazza v. Robinhood Markets, Inc.*, No. 3:26-cv-05610, Dkt. 1 ("*Mazza* Compl.") ¶ 1; *Collar v. Robinhood Markets, Inc.*, No. 3:26-cv-05724, Dkt. 1 ("*Collar* Compl.") ¶¶ 3-5; *Austin v. Robinhood Markets, Inc.*, No. 3:26-cv-05978, Dkt. 1

[1] Robinhood files this single, consolidated motion to compel arbitration pursuant to the Court's order consolidating these cases, Dkt. 45. This motion supersedes the motion to compel arbitration that Robinhood previously filed in *Chehal* on June 29, 2026. Dkt. 32.

("*Austin* Compl.") ¶ 1. Event contracts are a type of derivative that is governed by the Commodity Exchange Act ("CEA") and regulated by the Commodity Futures Trading Commission ("CFTC"). *See* 7 U.S.C. § 1a(47)(A)(ii) (defining "swaps" to include event contracts). Like other derivatives, event contracts traded on CFTC-designated exchanges have long been subject to the CFTC's "exclusive jurisdiction." 7 U.S.C. § 2(a)(1)(A); *see also* CFTC Amicus Br., *KalshiEX, LLC v. Schuler*, No. 26-3196 (6th Cir. May 12, 2026), http://tinyurl.com/4e52xer5; Prediction Markets, 91 Fed. Reg. 35,806 (June 12, 2026) (notice of proposed rulemaking). As relevant here, Robinhood Derivatives offers a CFTC-registered platform that facilitates trades of event contracts on a CFTC-designated exchange operated by Kalshi in compliance with the CEA. NFA, *Robinhood Derivatives LLC, Profile 0424278*, https://tinyurl.com/3w2cbt3b; *see also* CFTC, *Order of Designation: In the Matter of the Application of KalshiEX LLC for Designation as a Contract Market* (Nov. 3, 2020).

Nevertheless, Plaintiffs claim that Robinhood is liable under the laws of several States for facilitating their trades on Kalshi's exchange. *Chehal* Compl. ¶¶ 4-7, 53-57; *Mazza* Compl. ¶¶ 1-8; *Collar* Compl. ¶¶ 1-10; *Austin* Compl. ¶¶ 1-8. Plaintiffs allege that they are residents of seven States: California (two plaintiffs, Chehal and Patel), New Jersey (Levi), New York (two plaintiffs, Gayed and Reyes), Michigan (Jeffrey Ngafua), Georgia (two plaintiffs, Mazza and Jordan), Ohio (two plaintiffs, Austin and Gregory), and Florida (Collar). *Chehal* Compl. ¶¶ 10-14; *Mazza* Compl. ¶ 13; *Collar* Compl. ¶¶ 12-14; *Austin* Compl. ¶¶ 15-16. Plaintiffs variously assert claims under:

- Their respective States' Statutes of Anne, which are anti-gambling laws modeled on a 1710 English statute. *Chehal* Compl. ¶¶ 93-101, 118-29; *Mazza* Compl. ¶¶ 89-106; *Collar* Compl. ¶¶ 88-106; *Austin* Compl. ¶¶ 91-111.

- California Unfair Competition Law. *Chehal* Compl. ¶¶ 74-92; *Mazza* Compl. ¶¶ 124-43; *Austin* Compl. ¶¶ 112-31.

- The Statutes of Anne of dozens of other States in which Plaintiffs do not reside. *Mazza* Compl. ¶¶ 89-99; *Austin* Compl. ¶¶ 91-101.

- State consumer-protection laws. *Chehal* Compl. ¶¶ 102-17, 130-38; *Mazza* Compl. ¶¶ 107-23; *Collar* Compl. ¶¶ 79-87, 107-26.

- Unjust-enrichment principles. *Chehal* Compl. ¶¶ 139-42; *Mazza* Compl. ¶¶ 144-48; *Collar* Compl. ¶¶ 127-30; *Austin* Compl. ¶¶ 132-36.

Plaintiffs bring all of their claims against both Robinhood Derivatives and Robinhood Markets. Plaintiffs allege that they traded event contracts on Kalshi's CFTC-regulated exchange through Robinhood Derivatives' Prediction Markets Hub, through which users with Robinhood Derivatives accounts can access Kalshi's exchange. *Chehal* Compl. ¶¶ 10-16; *Mazza* Compl. ¶¶ 13-15; *Collar* Compl. ¶¶ 12-16; *Austin* Compl. ¶¶ 15-18. They allege that Robinhood Markets, as the parent company of Robinhood Derivatives, is "generally responsible for all of Robinhood's operations, including prediction markets." *Chehal* Compl. ¶¶ 15, 17; *Mazza* Compl. ¶¶ 14, 16; *Collar* Compl. ¶¶ 15, 17; *Austin* Compl. ¶¶ 17, 19. Plaintiffs otherwise make little effort to differentiate between the two entities, referring to them collectively as "Robinhood" throughout each complaint. *Id.*

**B. Plaintiffs' Arbitration Agreements**

Ten of the 11 Plaintiffs across the four consolidated actions (Chehal, Patel, Levi, Gayed, Mazza, Collar, Jordan, Reyes, Austin, and Gregory) executed arbitration agreements with Robinhood Derivatives. Nine of those Plaintiffs—all but Jordan—executed an arbitration agreement titled "Futures Arbitration Agreement." Martin Decl. ¶ 4, Ex. E. Plaintiff Jordan executed a subsequent version of that agreement, titled "Robinhood Derivatives Arbitration Agreement." Martin Decl. ¶ 4, Ex. F. Both arbitration agreements were presented to all ten Plaintiffs in a materially identical fashion and, for present purposes, contain materially identical language. Martin Decl. ¶ 5, Exs. E, F, G. (Robinhood accordingly refers to both agreements as the "Arbitration Agreement.") Only Plaintiff Ngafua chose not to agree to arbitration. *Id.* ¶¶ 9-10, Ex. H.

The Arbitration Agreement was presented to Plaintiffs separately from any other terms or conditions, and it was presented on its own screen that Plaintiffs needed to navigate past as part of the process of setting up their derivatives accounts on Robinhood Derivatives' platform. *See* Martin Decl. ¶¶ 5-7. The screen containing the Arbitration Agreement was titled "RHD arbitration agreement" and displayed the text of the agreement immediately underneath, making immediately visible to users the sentence "[a]ny controversy or claim arising out of or relating to my futures account, transactions with Robinhood Derivatives … or the breach thereof, shall be settled by arbitration." Martin Decl. ¶ 5, Ex. E; *see also id.* ¶ 5, Ex. F (version of agreement executed by Jordan with materially identical language). At the bottom of the screen were the options to "Agree" or "Continue without agreeing."

Martin Decl. ¶ 5, Ex. G. For example, a screenshot of the screen that contains the Arbitration Agreement, as it appears on an iPhone currently, is below:




Martin Decl., Ex. G.

Robinhood did not require any of the Plaintiffs to execute the Arbitration Agreement. Although Robinhood Derivatives requires users like the Plaintiffs here to agree to certain terms and conditions to trade event contracts—including those in the Futures Client Agreement, which governs the trading of event contracts on Robinhood's platform—the Arbitration Agreement is *not* one of those required terms or conditions. Martin Decl. ¶¶ 4-6. The Arbitration Agreement itself states in bold and capital letters that "you need not sign this agreement to open or maintain an account with Robinhood

Derivatives, LLC." *Id.* Exs. E, F (emphasis and capitalization omitted). And as mentioned, Robinhood Derivatives offers users the choice *either* (A) to execute the Arbitration Agreement by selecting "Agree" or (B) to select "Continue without agreeing." *Id.* ¶ 5. Users must select one of those options to continue, but they are free to choose either one: If users select "Continue without agreeing," they can finish setting up their account and trade event contracts in the same manner as users who execute the Arbitration Agreement. *Id.* ¶ 7.

Users who select "Agree," including the Assenting Plaintiffs here, thereby voluntarily opt in to binding arbitration of "[a]ny controversy or claim arising out of or relating to my futures account, transactions with Robinhood Derivatives, LLC pursuant to the Futures Client Agreement between us or the breach thereof." Martin Decl. Ex. E; *id.* Ex. F ("[a]ny controversy or claim arising out of or relating to my Robinhood Derivatives account, or transactions with Robinhood Derivatives, LLC pursuant to the Futures Client Agreement between us or the breach thereof"). Each Assenting Plaintiff further agreed that they were waiving their "right to sue in a court of law." *Id.* Exs. E, F.

## ARGUMENT

The FAA requires courts to enforce valid arbitration agreements according to their terms and, when timely invoked, stay litigation in favor of arbitration. The FAA's mandate applies here because the Arbitration Agreement between each of the Assenting Plaintiffs and Robinhood Derivatives is valid and squarely encompasses the Assenting Plaintiffs' claims against Robinhood Derivatives. And the Arbitration Agreement applies to the Assenting Plaintiffs' claims against Robinhood Markets under basic principles of agency law and equitable estoppel. The Court should compel the ten Plaintiffs who voluntarily signed the Arbitration Agreement to arbitrate their claims against Robinhood and stay litigation of those Plaintiffs' claims pending arbitration.

### I. The FAA Governs The Parties' Arbitration Agreement

The FAA provides that, in a "contract evidencing a transaction involving commerce," any written provision "to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4." 9 U.S.C. § 2. The statute thus requires courts to "enforce arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*,

587 U.S. 176, 183 (2019) (citation omitted); *see also* 9 U.S.C. §§ 3-4. The FAA's reach is "expansive[]," "coinciding with that of the Commerce Clause," *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274 (1995), and the statute thereby embodies "the national policy favoring arbitration," *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 6 (1st Cir. 2014).

The FAA plainly applies to the Arbitration Agreement here. Each Plaintiff's Arbitration Agreement is a "contract evidencing a transaction involving [interstate] commerce." 9 U.S.C. § 2. The Assenting Plaintiffs, residents of California, New York, New Jersey, Georgia, Ohio, and Florida, entered into the Arbitration Agreement with Robinhood Derivatives in connection with each Plaintiff's opening of an account to trade derivatives, including event contracts through Robinhood's online platform. *Chehal* Compl. ¶¶ 10-13, 16; *Mazza* Compl. ¶ 13; *Collar* Compl. ¶¶ 12-14; *Austin* Compl. ¶¶ 15-16. By doing so, each of the Assenting Plaintiffs agreed to the terms of the Arbitration Agreement and therefore is required "to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2; *see* Martin Decl. Exs. E, F. The Arbitration Agreement therefore must be enforced so long as it is "valid" and "the claim asserted comes within" the terms of the agreement. *Grand Wireless*, 748 F.3d at 6.

## II. The Arbitration Agreement Is Valid

The Arbitration Agreement is valid and enforceable under any potentially applicable state law. This case involves "so-called 'clickwrap' agreements, in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 513 (9th Cir. 2023). Courts in all of the States where the Assenting Plaintiffs reside "routinely find clickwrap agreements enforceable." *Id.* (discussing California law).[2]

[2] *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) ("New York and California apply substantially similar rules for determining whether the parties have mutually assented" to the terms of a clickwrap contract. (citation omitted)); *Wu v. Uber Techs., Inc.*, 43 N.Y.3d 288, 307 (2024) (The "clickwrap process, or those substantially like it, satisfy the requirements for formation of an agreement to arbitrate" under New York law.); *Erasmus v. LegalZoom.com, Inc.*, 2025 WL 1122237, at *5 (D.N.J. Apr. 15, 2025) (Clickwrap agreements are enforceable in New Jersey "because by requiring a physical manifestation of assent, a user is said to be put on inquiry notice of the terms assented to." (citation omitted)); *Hunt v. Experian Info. Sols. Inc.*, 2025 WL 104324, at *4 (M.D. Ga. Jan. 15, 2025) ("Web-based 'click-wrap' agreements" are generally enforceable under Georgia law.); *Ranazzi v. Amazon.com, Inc.*, 46 N.E.3d 213, 217 (Ohio Ct. App. 2015) ("Multiple courts have held that clicking is an acceptable method to manifest assent to the terms of an agreement" under Ohio law.); *Massage*

The Arbitration Agreement is a type of clickwrap agreement and so presumptively enforceable under each of these States' laws. Robinhood Derivatives "presents users with" the text of the Arbitration Agreement on screen, and "users must [click] a box explicitly stating 'I agree'" to be bound by that separate agreement. *Oberstein*, 60 F.4th at 513; *see* Martin Decl. ¶¶ 5-6, Ex. G. Users must decide whether to agree to the Arbitration Agreement *separately* from agreeing to the Futures Client Agreement that all Robinhood Derivatives users must execute. Martin Decl. ¶¶ 3-4. Users are presented with a binary choice—"Agree" to the Arbitration Agreement, or "Continue without agreeing"—and are informed that they may create a Robinhood Derivatives account *without* assenting to arbitration. *Id.* ¶¶ 4-5, Exs. E, F. And users must affirmatively choose one option or the other to proceed; they cannot simply skip past that choice and are not deemed to have agreed to arbitration by default. *Id.* ¶ 6. The Arbitration Agreement is therefore enforceable.

The same conclusion follows even without the presumption of validity for "clickwrap" agreements. *Oberstein*, 60 F.4th at 514-15 (citation omitted). An arbitration agreement on a webpage is valid so long as it provides "reasonably conspicuous notice of the terms" and "the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* The "notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* at 515 (citation omitted). And the user's "click of a button" suffices to establish assent so long as the user is "explicitly notif[ied] … of the legal significance of the action." *Id.* (citation omitted).

The Arbitration Agreement easily satisfies both criteria, as the attached declaration makes abundantly clear. The Assenting Plaintiffs had reasonably conspicuous notice of the terms of the Arbitration Agreement because its terms—that "[a]ny controversy or claim arising out of" Plaintiffs' "account" or "transactions" "shall be settled by arbitration"—were prominently visible during each Assenting Plaintiff's account-opening process, separately from the Futures Client Agreement that all Robinhood Derivatives users must accept to create an account. Martin Decl. ¶ 5, Exs. E, F. And each Assenting Plaintiff provided "an unambiguous manifestation of assent": Each was required to "[click] a box

---

*Envy Franchising, LLC v. Doe*, 339 So. 3d 481, 484 (Fla. Dist. Ct. App. 2022) ("[C]lickwrap agreement[s] … are generally enforceable" under Florida law.).

explicitly stating" either "Agree" or "Continue without agreeing" before opening their accounts with Robinhood Derivatives. *Oberstein*, 60 F.4th at 513; *see* Martin Decl. ¶¶ 5-7. As the time-stamped records of assent attached to the Martin declaration make clear with Plaintiff-specific details, each of the Assenting Plaintiffs chose "Agree" instead of "Continue without agreeing." Martin Decl. ¶¶ 9-10, Ex. H. There can be no question that Assenting Plaintiffs voluntarily entered an enforceable arbitration agreement.

**III. The Arbitration Agreement Covers Plaintiffs' Claims**

The Assenting Plaintiffs' claims fall squarely within the four corners of the Arbitration Agreement they each voluntarily entered. Under the FAA, whether an arbitration agreement governs a dispute is controlled by "the parties' intentions," "but those intentions are generously construed as to issues of arbitrability." *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1063 (9th Cir. 2020) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). The "language in the [arbitration] Clause" governs, and any ambiguity "must [be] resolve[d] in favor of arbitration." *Id.* at 1063-64. That "presumption [of arbitrability] carries particular force where the arbitration clause is phrased in broad and general terms"—such as by "covering 'any claim, dispute, or controversy' that 'arises from or relates to' the parties' underlying agreement or transactions 'thereunder.'" *Charles v. Portfolio Recovery Assocs., LLC*, 2024 WL 1672350, at *2 (9th Cir. Apr. 18, 2024).

Here, the Arbitration Agreement unambiguously requires arbitration of Plaintiffs' claims. The agreement broadly requires arbitration of "[*a*]*ny* controversy or claim *arising out of or relating to* [the user's] futures account, transactions with Robinhood Derivatives, LLC pursuant to the Futures Client Agreement between us or the breach thereof." Martin Decl. Ex. E (emphases added); Ex. F ("[*a*]*ny* controversy or claim *arising out of or relating to* [the user's] Robinhood Derivatives account, or transactions with Robinhood Derivatives, LLC pursuant to the Futures Client Agreement between us or the breach thereof" (emphases added)). All of the Assenting Plaintiffs' claims against Robinhood directly target transactions that they allegedly executed through Robinhood Derivatives accounts. Those accounts were created for each Assenting Plaintiff once Robinhood Derivatives approved his or her application, which occurred only after he or she executed the Arbitration Agreement. And all of those alleged transactions were made pursuant to the Futures Client Agreement that each had also previously

executed. Martin Decl. ¶¶ 3, 10; *id.* Ex. A at 12-13, Ex. B at 12-13, Ex. C at 12-13, Ex. D at 12-13. All of the claims stem from alleged losses on transactions that the Assenting Plaintiffs purportedly executed "on Robinhood's Prediction Markets Hub." *Chehal* Compl. ¶¶ 40-44; *Mazza* Compl. ¶ 13; *Collar* Compl. ¶¶ 12-14; *Austin* Compl. ¶¶ 15-16. Their Statute of Anne claims allege that Plaintiffs "are entitled to recover losses resulting from trading event contracts on Robinhood's platform." *Chehal* Compl. ¶ 120; *Mazza* Compl. ¶¶ 89-106; *Collar* Compl. ¶¶ 88-106; *Austin* Compl. ¶¶ 91-111. The state consumer-protection claims allege that Robinhood made "misrepresentations and omissions" about the legality of event contracts available through the Robinhood Derivatives platform "that a reasonable person would have considered important in deciding whether or not to purchase event contracts." *Chehal* Compl. ¶ 89; *see also id.* ¶¶ 79, 106, 113, 115-16; *Mazza* Compl. ¶¶ 107-43; *Collar* Compl. ¶¶ 79-87, 107-26; *Austin* Compl. ¶¶ 112-31. And the unjust-enrichment claims allege that Plaintiffs "conferred a benefit on Robinhood by trading event contracts on Robinhood's platform." *Chehal* Compl. ¶¶ 140-42; *Mazza* Compl. ¶¶ 144-48; *Collar* Compl. ¶¶ 127-30; *Austin* Compl. ¶¶ 132-36. Even if there were any doubt, the presumption in favor of arbitration—which "carries particular force" here given the breadth of the arbitration clause—would resolve it. *Charles*, 2024 WL 1672350, at *2; *see also Shivkov*, 974 F.3d at 1064.

In their opposition to deferring Robinhood's motion-to-dismiss deadline in *Chehal*, the *Chehal* Plaintiffs suggested that their claims are not covered by the Arbitration Agreement because they executed a separate arbitration agreement with Robinhood Financial LLC (Robinhood Financial) and Robinhood Securities, LLC (Robinhood Securities) that, "pursuant to FINRA rules, carves out from any arbitration agreement claims against 'Robinhood' pending as class actions." *Chehal*, Dkt. 22 at 3. But that carve-out is inapplicable twice over. First, the agreement expressly defines the term "Robinhood" as used in *that* document to mean only Robinhood Financial and Robinhood Securities, as the *Chehal* Plaintiffs' own exhibit confirms. *Chehal*, Dkt. 22-2 at 1. It does not mention Robinhood Derivatives. Second, as the *Chehal* Plaintiffs admit, that carve-out from arbitration exists because of FINRA's rules, but those rules have no application to Robinhood Derivatives. FINRA, a self-regulatory organization (SRO) established under the securities laws, regulates securities broker-dealers like Robinhood Financial and Robinhood Securities. *See, e.g.*, FINRA, *Entities We Regulate* (last visited

July 20, 2026), https://perma.cc/Z9X9-LZ6T. FINRA does *not* have any authority under the commodities laws to regulate trading in derivatives like event contracts or CFTC-regulated entities like Robinhood Derivatives. Rather, the CFTC has "exclusive jurisdiction" over event-contract trading and entities that facilitate that trading. 7 U.S.C. § 2(a)(1)(A); *see also* Martin Decl. Exs. E, F (citing "CFTC Rule 166.5"). The SRO for the derivatives industry, designated by the CFTC, is the National Futures Association (NFA). Unlike FINRA, which requires the entities it regulates (like Robinhood Financial and Robinhood Securities) to provide a class-action carve-out for arbitration agreements, neither the CFTC nor the NFA imposes such a requirement. *See generally* NFA, *Compliance Rules* (effective June 30, 2020), https://perma.cc/ZCW5-D4X2. The CFTC and the NFA do not forbid arbitration of claims that are pending in putative class actions; as relevant here, they require only that arbitration agreements not be a "condition of using the Member['s] . . . services," *id.* Rule 2-53—*i.e.*, that they be optional to the user—and that they be agreed to separately, 17 C.F.R. § 166.5(c). As already explained, the Arbitration Agreement satisfies those requirements. Martin Decl. ¶¶ 4-6.

The separate arbitration agreement that the *Chehal* Plaintiffs cited therefore is irrelevant here as to all of the Plaintiffs and claims in the consolidated actions. Regardless of any separate, additional agreements they might have executed with Robinhood Financial or Robinhood Securities, the Arbitration Agreement that each of them executed with Robinhood Derivatives contains no class-action carve-out and encompasses their claims.

## IV. The Arbitration Agreement Is Enforceable By Robinhood Markets

Although Assenting Plaintiffs' claims focus entirely on alleged transactions they executed through their Robinhood Derivatives accounts, their complaints also include Robinhood Markets, the parent company of Robinhood Derivatives, as a defendant. Plaintiffs assert identical claims against both entities (often copying each other's allegations verbatim), and Plaintiffs "refe[r]" to those entities "globally" as "Robinhood" throughout the complaints because of their alleged "similarity in function." *Chehal* Compl. ¶ 17; *Collar* Compl. ¶ 17; *see also Mazza* Compl. at 1 & ¶ 16; *Austin* Compl. at 1 & ¶ 19. Those claims also must be resolved in arbitration for all of the Assenting Plaintiffs.

To be sure, Plaintiffs' threadbare claims against Robinhood Markets will fail on the pleadings under Ninth Circuit precedent. *Gibson v. City of Portland*, 165 F.4th 1265, 1289-90 (9th Cir. 2026)

("permitting parties to file pleadings that do not tie factual averments against specific parties to individual causes of action infringes Rule 8"); *see also Dey v. Robinhood Mkts., Inc.*, 780 F. Supp. 3d 882, 896 (N.D. Cal. 2025) (dismissing claims against Robinhood Markets for this reason). But more immediately, the complaints' attempt to impose liability on Robinhood Markets for its alleged relationship with Robinhood Derivatives means that Robinhood Markets can enforce its subsidiary's arbitration agreement. The "Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870 (9th Cir. 2021) (citing *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013), in turn citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). As relevant here, courts frequently enforce arbitration agreements as to nonsignatories under state-law principles of agency and equitable estoppel. *See Franklin*, 998 F.3d at 870; *Kroskey v. Elevate Labs, LLC*, 2025 WL 1507091, at *4 (N.D. Cal. May 27, 2025). Both doctrines preclude Assenting Plaintiffs from seeking to circumvent their arbitration agreements by filing tagalong claims against Robinhood Markets.

***Agency.*** Principles of agency law require the Assenting Plaintiffs to arbitrate their claims against Robinhood Markets. It is "well settled that 'arbitration may be compelled by a non-signatory against a signatory to a contract on the basis of agency principles.'" *Drosos v. GMM Glob. Money Managers Ltd.*, 2023 WL 7545067, at *7 (N.J. Super. Ct. App. Div. Nov. 14, 2023) (New Jersey law, quoting *Hirsch v. Amper Fin. Servs., LLC*, 215 N.J. 174, 192 (2013)).[3] "Agency principles have been held to permit nonsignatory corporations to compel arbitration under arbitration clauses signed by their corporate parents, subsidiaries, or affiliates, at least when the allegations against the nonsignatory corporation do not differ substantially from those against its signatory affiliate." *Kroskey*, 2025 WL 1507091, at *4 (quoting *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 990 (N.D. Cal. 1996)).

[3] *See also, e.g.*, *Kroskey*, 2025 WL 1507091, at *4 (same, under California law); *Revis v. Schwartz*, 192 A.D.3d 127, 142-44 (N.Y. App. Div. 2020) (same, under New York law); *AutoNation Fin. Servs. Corp. v. Arain*, 592 S.E.2d 96, 99 (Ga. Ct. App. 2003) (same, under Georgia law); *Heller v. Blue Aerospace, LLC*, 112 So. 3d 635, 637 (Fla. Dist. Ct. App. 2013) (same, under Florida law); *Bowie v. Clear Your Debt, LLC*, 523 F. App'x 315, 317 (6th Cir. 2013) (same, under Ohio law); *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 990-91 (N.D. Cal. 1996) (same).

Judge Davila's recent decision in *Kroskey* is illustrative. There, a plaintiff claimed that Elevate Labs and MindSnacks violated "various federal and California state privacy laws" through their operation of a mobile meditation application called Balance. 2025 WL 1507091, at *1. The plaintiff had executed an arbitration agreement with Elevate Labs, but not MindSnacks. *Id.* at *4. The court compelled arbitration of the claims against MindSnacks as well, however, because the plaintiff "allege[d] that Defendant Elevate Labs is an 'affiliate' of Defendant MindSnacks, and that together, they 'jointly operate, control, program, and run the Balance App.'" *Id.* at *5. And the plaintiff then proceeded "to refer to the two companies jointly as 'Defendants' in the remainder of the Complaint." *Id.* Because the plaintiff brought "identical claims arising from identical conduct, the court f[ound] that MindSnacks may enforce the arbitration agreement here as an affiliate of the signatory." *Id.*

Courts routinely reach the same conclusion with respect to a wide variety of nonsignatories whose "corporate parents, subsidiaries, or affiliates" signed the arbitration agreement when the allegations against each do not "differ substantially." *Prograph*, 928 F. Supp. at 990; *see Drosos*, 2023 WL 7545067, at *8-9 (parent could enforce arbitration agreement signed by subsidiary "on the basis of agency principles"); *Thibault v. Heartland Recreational Vehicles, LLC*, 2019 WL 1274729, at *7 (S.D. Ohio Mar. 19, 2019) ("infer[ring] that" nonsignatory defendant had agency relationship with signatory based on factual allegations and compelling arbitration with nonsignatory defendants because claims against them were "largely interdependent on the claims against [signatory]").[4]

Robinhood Markets is entitled to enforce the Arbitration Agreement here for the same reasons. Plaintiffs allege verbatim in each complaint that Robinhood Markets is the parent company of Robinhood Derivatives and "is generally responsible for all of Robinhood's operations, including prediction markets." *Chehal* Compl. ¶¶ 15, 17; *Mazza* Compl. at 1 & ¶¶ 14, 16; *Collar* Compl. ¶¶ 15, 17; *Austin*

[4] *See also, e.g.*, *Hirsch*, 215 N.J. at 193 (approving appellate "decision to compel arbitration" under New Jersey law "given the *agency* relationship between the parent and subsidiary insurance corporations in the litigation" (emphasis added)); *Hirschfeld Prods., Inc. v. Mirvish*, 673 N.E.2d 1232, 1233 (N.Y. 1996) (compelling arbitration under New York law against nonsignatory owner of a company where "Plaintiff's complaint is directed to misconduct related to" the company); *Lankford v. Orkin Exterminating Co., Inc.*, 597 S.E.2d 470, 474-75 (Ga. Ct. App. 2004) (nonsignatory parent company defendant could compel arbitration because plaintiff sought to hold the nonsignatory liable "under a theory of respondeat superior" for the acts of its subsidiary signatory under Georgia law); *Heller*, 112 So. 3d at 637 (requiring arbitration with nonsignatory based on Florida law "principles of agency" because "claims against the non-signatory" were founded "on essentially the same allegations and operative facts" as claims against signatory).

Compl. at 1 & ¶¶ 17, 19. And Plaintiffs assert identical claims against both entities and "refe[r]" "globally" to both entities as "Robinhood" throughout the complaints because of their alleged "similarity in function." *Chehal* Compl. ¶ 17; *Collar* Compl. ¶ 17; *see also Mazza* Compl. at 1 & ¶ 16; *Austin* Compl. at 1 & ¶ 19. The only substantive allegations specific to Robinhood Markets in any of the complaints are two statements attributed to an alleged employee of Robinhood Markets, which "do not differ substantially" (*Prograph*, 928 F. Supp. at 990) from any of the other allegedly misleading statements of which Plaintiffs complain. *Chehal* Compl. ¶¶ 27-28; *Collar* Compl. ¶¶ 27-28; *Mazza* Compl. ¶¶ 37-39; *Austin* Compl. ¶¶ 40-42. The Assenting Plaintiffs cannot seek to hold Robinhood Markets vicariously liable for the alleged acts of its subsidiary while simultaneously refusing to arbitrate under the contract they voluntarily executed with that subsidiary that governs the subject matter of the Assenting Plaintiffs' claims against both defendants.

***Equitable Estoppel.*** Equitable estoppel similarly requires compelling arbitration as to the Assenting Plaintiffs' claims against Robinhood Markets because Plaintiffs cannot seek to hold Robinhood Markets liable for their transactions with Robinhood Derivatives while simultaneously avoiding their Arbitration Agreement with Robinhood Derivatives. The point of equitable estoppel is to "preven[t] a party from playing fast and loose with its commitment to arbitrate, honoring it when advantageous and circumventing it to gain undue advantage." *Franklin*, 998 F.3d at 871.

That principle is well-established under the law of each State in which the Assenting Plaintiffs reside. Under California law, if the "substance" of a party's claims against a third party is "intimately founded in and intertwined with the underlying contract obligations," that third party may move to compel arbitration of the claim even though the third party did not sign the underlying contract. *Franklin*, 998 F.3d at 871, 875; *see also Ford Motor Warranty Cases*, 17 Cal. 5th 1122, 1131 (2025) (same) (quoting *Metalclad Corp. v. Ventana Env't Organizational P'ship*, 109 Cal. App. 4th 1705, 1717 (2003)). The laws of New York and Ohio are materially the same. *Soloway v. CIM Grp.*, 237 A.D.3d 576, 577 (N.Y. App. Div. 2025) (under New York law, a signatory to an agreement is estopped from avoiding arbitration with a nonsignatory when the signatory brings claims that are "integrally related" to the agreement the estopped party has signed); *O'Brien & Assocs. Co., LPA v. East Worthington, LLC*, 2023 WL 6307762, at *5 (Ohio Ct. App. Sept. 28, 2023) (similar, under Ohio law) (citation

omitted). Florida and Georgia law provide that equitable estoppel applies whenever the plaintiff "alleg[es] … substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Integrated Health Servs. at Cent. Fla., Inc. v. Est. of DeSantis ex rel. DeSantis*, 407 So. 3d 547, 551 (Fla. Dist. Ct. App. 2025) (Florida law); *Order Homes, LLC v. Iverson*, 685 S.E.2d 304, 310-11 (Ga. Ct. App. 2009) (same under Georgia law). And while New Jersey law requires a showing of detrimental "reliance" by the nonsignatory, *see Hirsch*, 215 N.J. at 192-93, that reliance requirement is satisfied by the necessity of "defend[ing] against claims which essentially arise" out of contracts with a corporate affiliate. *Sicily by Car S.p.A. v. Hertz Glob. Holdings, Inc.*, 2015 WL 2403129, at *5 (D.N.J. May 20, 2015) (compelling arbitration on that basis under New Jersey law). Thus, Robinhood Markets is entitled to invoke arbitration under the doctrine of equitable estoppel if "the substance of [Plaintiffs'] claims" is "rooted" in their "relationship with [Robinhood Derivatives], which is governed by the Arbitration Agreement." *Franklin*, 998 F.3d at 875.

The Assenting Plaintiffs' claims against Robinhood Markets satisfy that test. Their entire theory is that Robinhood Markets and Robinhood Derivatives are both liable for transactions executed through accounts at Robinhood Derivatives—accounts governed by the Assenting Plaintiffs' agreements with Robinhood Derivatives, which include the Arbitration Agreement. *E.g.*, *Chehal* Compl. ¶¶ 16, 34-44; *Mazza* Compl. ¶¶ 13-14, 33-46, 52. And their claims that those transactions were somehow fraudulent and illegal, even though the CEA and CFTC authorize and exclusively regulate the trading of event contracts, will necessarily require examining the terms to which the Assenting Plaintiffs agreed with Robinhood Derivatives. Those terms disclose the applicability of the CEA and CFTC regulations to event contract trading. *See* Martin Decl. Ex. A at 1, 3, Ex. B at 1, 3. Plaintiffs' attempted artful pleading around those terms is irrelevant; what matters is the "substance of [Plaintiffs'] claims," *Franklin*, 998 F.3d at 875. And here, the Assenting Plaintiffs' claims cannot be "fully viable without reference" to their agreements with Robinhood Derivatives, which include the Arbitration Agreement. *Bender v. Twilio Inc.*, 2025 WL 2308484, at *6 (N.D. Cal. Aug. 11, 2025).

Courts have applied equitable estoppel in materially similar circumstances, including as to different claims against Robinhood Markets itself. In *In re January 2021 Short Squeeze Trading Litig.*,

2025 WL 1865945 (S.D. Fla. Apr. 8, 2025), for example, the plaintiffs brought claims against Robinhood Markets and its two broker-dealer subsidiaries, Robinhood Financial and Robinhood Securities, alleging misrepresentations and violations of the securities laws. *Id.* at *1 (applying California law). Although Robinhood Markets was not a party to the arbitration agreement between the plaintiffs and Robinhood Financial and Robinhood Securities, the court compelled arbitration as to Robinhood Markets under equitable-estoppel principles after denying class certification. *Id.* at *4 n.4. The court reasoned that "Robinhood Markets, as the parent Robinhood entity … may enforce [the] arbitration clause" because the plaintiffs' claims "relate to securities transactions that were executed through Robinhood accounts governed by" the contract with Robinhood Securities and Robinhood Financial, which had a "preexisting relationship" with Robinhood Markets. *Id.* at *4 n.4.

Many other cases are in accord. In *Hunt v. Meta Platforms, Inc.*, 735 F. Supp. 3d 1133 (N.D. Cal. 2024), Judge Pitts compelled a plaintiff to arbitrate claims against Google and Meta even though neither party was a named signatory to the arbitration agreement. *Id.* at 1138. The plaintiff had entered an arbitration agreement only with H&R Block. But the plaintiff's "mail and wire fraud claims against Google and Meta depend[ed] on" whether his contract with H&R Block "was fraudulent." *Id.* at 1136-39. The court accordingly held that the claims against Google and Meta were arbitrable as well. Likewise, in *Franklin*, the Ninth Circuit held that a hospital could compel a nurse to arbitrate her statutory labor and employment claims against the hospital, even though the hospital itself had no arbitration agreement with the nurse. 998 F.3d at 875. As the court explained, the nurse had executed an arbitration agreement with a staffing agency that had placed her with the hospital, and the "substance of [the nurse's] claims against the Hospital" were so "intertwined" with her staffing-agency contract "that it would be unfair for [the nurse] to avoid arbitration." *Id.* The list goes on.[5] The same result should follow here.

[5] *See, e.g.*, *Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782, 786 (2017) (nonsignatory defendant could invoke an arbitration clause to compel a signatory to arbitrate when the claims against the nonsignatory were "intimately founded in and intertwined with" the underlying agreement); *Ragone v. Atlantic Video at Manhattan Ctr.*, 595 F.3d 115, 126-27 (2d Cir. 2010) (nonsignatory to an arbitration agreement could compel a signatory to arbitrate a dispute when "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed"); *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 941-42, 944-45 (Fla. Dist. Ct. App. 2004) (nonsignatory defendants could compel a signatory to arbitrate when their dispute with the plaintiff was "intimately related to" their agreement with a signatory); *Townsend v. Stand Up Mgmt., Inc.*, 2019 WL 3729266, at *9 (N.D. Ohio Aug. 8,

## V. The FAA Requires Staying Proceedings Against Robinhood Pending Arbitration

Because Assenting Plaintiffs agreed to arbitrate their claims through valid and enforceable arbitration agreements, the Court should stay their claims pending the resolution of any arbitration that Assenting Plaintiffs bring against Robinhood. The FAA provides that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Thus, "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration," the court "must" stay the proceeding. *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024). A stay is thus required here.

## CONCLUSION

The Court should order the Assenting Plaintiffs to submit their claims to arbitration. The Court should also stay their claims pending arbitration.

---

2019) (under Ohio law, nonsignatory defendants could compel arbitration because plaintiffs alleged that they engaged in "substantially interconnected and concerted misconduct" with signatory defendants); *Price v. Ernst & Young, LLP*, 617 S.E.2d 156, 159 (Ga. Ct. App. 2005) (nonsignatory defendants, including the defendant signatory's parent company, could compel arbitration because the plaintiff's claims "arise out of and relate directly to" the agreement); *Metalclad*, 109 Cal. App. 4th at 1717 (nonsignatory parent holding company could compel arbitration when plaintiff alleged tort claims that were "intimately founded in and intertwined with" agreement with subsidiary); *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 709-10 (9th Cir. 2024) (under California law, nonsignatory airline could compel arbitration because plaintiffs' claims against an airline "turn[] on whether" a third-party vendor "abided" by the terms of a contract, and so "this interconnectedness … makes equitable estoppel appropriate").

Dated: July 20, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jonathan C. Bond*

Abigail A. Barrera (SBN 301746)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8262
ABarrera@gibsondunn.com

Eugene Scalia (SBN 151540)
Jonathan C. Bond (*pro hac vice*)
Nick Harper (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: 202.955.8500
EScalia@gibsondunn.com
JBond@gibsondunn.com
NHarper@gibsondunn.com

*Counsel for Defendants Robinhood Markets, Inc. and Robinhood Derivatives, LLC*